**In re FREYMILLER TRUCKING, INC., Debtor.**

**Bankruptcy No. 95–12095–BH.**

United States Bankruptcy Court, W.D. Oklahoma.

Jan. 29, 1996.

Judy Hamilton Morse, of Crowe & Dunlevy, Oklahoma City, Oklahoma for debtor.

Michael Primiano, Phoenix, Arizona for Industrial Commission of Arizona, Claimant.

*MEMORANDUM OF DECISION AND ORDER SUSTAINING DEBTOR'S OBJECTION TO THE CLAIM OF THE INDUSTRIAL COMMISSION OF ARIZONA*

RICHARD L. BOHANON, Bankruptcy Judge.

This contested matter concerns whether or not the claim of the Industrial Commission of Arizona qualifies for the Bankruptcy Code's tax priority. The answer requires that I define the noun "tax." One would think that this fundamental, unambiguous term was uniformly well defined in the cases and texts. Such, however, does not prove to be the case.

The debtor is a trucking company operating in several states, including Arizona. Its law mandates that employers provide workers' compensation insurance, and the debtor failed to comply with this requirement. The

Arizona statute also states that if an employer does not have insurance, or otherwise care for an injured employee, the Commission will pay for the care and then has a claim over against the employer.[1] One of the debtor's drivers was injured in Arizona and it cost the Commission almost $32,000 to care for him.

The debtor then commenced this bankruptcy case and the Commission filed its proof of claim for the amount paid, asserting it is entitled to the tax priority of 11 U.S.C. § 507(a)(8)(E)(ii).[2] The debtor objects, arguing instead that the Commission has only an ordinary, unsecured claim. The sole issue is whether or not the Commission's claim is a "tax".[3]

▮▮▮ The ordinary meaning of "tax" for purposes of determining priority in bankruptcy has been considered by the Supreme Court. Ninety years ago it held that "taxes" entitled to the bankruptcy priority are composed of the following elements: 1) a pecuniary burden; 2) laid upon individuals or their property; 3) regardless of their consent; 4) for the purposes of defraying the expenses of government or undertakings authorized by it; and 5) the amount is fixed by statute. *New Jersey v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906). In a later decision, *New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941), the Court applies only the first four elements without explaining its omission of the fifth.

Another source, consistent with *Anderson*, is *The Oxford English Dictionary*, Second Edition, 1990 which defines "tax" as "[a] compulsory contribution to the support of government, levied on persons, property, income, commodities, transactions, etc., *now at*

a *fixed rate*, mostly proportional to the amount on which the contribution is levied (emphasis added)."

▮▮▮ In order to define a statutory term it first is necessary to decide if it is a term of art intended to be applied in accordance with some technical meaning. If it is not, the definition then is determined by its common meaning. *See In re Brollier*, 165 B.R. 286, 289–290 (Bankr.W.D.Okla.1994). Here, no argument is made that the noun "tax" is used in any technical sense in the Bankruptcy Code and there is no reason why it should be so construed. Accordingly, recognized dictionaries are useful, primary sources for the words are used in keeping with their ordinary meaning. It also is within common understanding and sense that a "tax" is assessed at a fixed rate. I am unable to think of a "tax," in the ordinary sense of the noun, that is not based on a percentage of something, be it income, sales, corporate capital, or the value of property, a gift or inheritance.

Since taxes are always fixed at some rate taxpayers are able to predictably plan their financial affairs by determining in advance what their tax liabilities will be as a result of a particular transaction or event. If the amounts of tax assessments were fixed arbitrarily and indiscriminately taxpayers could not forecast their liabilities for their tax obligations would be based upon totally unforeseeable circumstances. This result would simply belie the common, ordinary understanding of the noun "tax."

Other courts addressing the tax priority generally use the four part *Feiring* definition, omitting consideration of the fixed rate element.[4] Both parties cite *Los Angeles*

---

**1.** The workers' compensation scheme is contained in Arizona Revised Statutes § 23–907.

**2.** 11 U.S.C. § 507, the priority statute, provides, in pertinent part:

(a) The following ... claims have priority in the following order:
(8) Eighth, allowed unsecured claims of governmental units, only to the extent such claims are for—
(E) an excise tax on—
(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.

**3.** Since the issue arises under the Bankruptcy Code, the outcome is determined by Federal law. *See New Jersey v. Anderson*, 203 U.S. 483, 491, 27 S.Ct. 137, 139–40, 51 L.Ed. 284 (1906).

**4.** *See e.g., In re Suburban Motor Freight, Inc.*, 998 F.2d 338 (6th Cir.1993); *New Neighborhoods v. W.Va. Workers' Compensation Fund*, 886 F.2d 714 (4th Cir.1989); *Pan American Paper Mills, Inc.*, 618 F.2d 159 (1st Cir.1980); *In re Chateaugay Corp.*, 153 B.R. 632 (Bankr.S.D.N.Y.1993); *In re Hutchinson*, 135 B.R. 890 (Bankr.D.Ariz. 1992); *In re Metro Transport. Co.*, 117 B.R. 143 (Bankr.E.D.Pa.1990); *In re Payne*, 27 B.R. 809

*County Sanitation District No. 2 v. Lorber Industries of California, Inc. (In re Lorber)*, 675 F.2d 1062 (9th Cir.1982) and *Camilli v. Industrial Commission of Arizona*, 182 B.R. 247 (9th Cir. BAP 1995).

In *Lorber*, the Court of Appeals examined an ordinance regulating water districts which assessed a surcharge when district services were utilized by industrial consumers. Because the consumer used the services voluntarily, the Court held the assessment was not a "tax". *Lorber*, at 1067.

The Ninth Circuit Bankruptcy Appellate Panel in *Camilli* reached a similar conclusion with regard to a claim made by the Industrial Commission of Arizona under the same statute at issue in this case. The Panel focussed on the "voluntary" nature of the debtor's decision not to purchase workers' compensation insurance, concluding that the assessment was, therefore, not a "tax".

I find, however, two problems with the analysis of *Lorber* and *Camilli*. Both turn only on the voluntary nature of the debtors' assumption of the liability. The definition of "tax" adopted by the Supreme Court in *Anderson*, however, is the source of the definition in *Feiring* on which both *Lorber* and *Camilli* rely. *Anderson* involved a franchise tax which was assessed for the privilege of doing business in New Jersey. Under the analysis performed in *Lorber* and *Camilli* the decision to do business in New Jersey might amount to consent by the debtor. The assessment in *Anderson* could, therefore, be deemed a voluntarily assumed debt and not a "tax." *Anderson* held, however, that the claim was for a "tax" entitled to the bankruptcy priority. *Anderson* at 492, 27 S.Ct. at 140. *Anderson*, thus, makes it clear that consent of the taxpayer is not always the determining factor in deciding whether or not governmental assessments are "taxes."

It is also necessary to distinguish "taxes" from the myriad of other compulsory charges, assessments, fees, and debts collected by governmental units from persons and used to defray the costs of government.[5] An obvious example is a judgment obtained by a governmental unit for collection of a debt owed to it.

Under the four elements of the *Feiring* definition most, if not all, judgments obtained by governmental units would meet the definition of a "tax". They are 1) pecuniary burdens, 2) laid upon individuals or their property, 3) regardless of their consent, and 4) for purposes of defraying the expenses of government or its undertakings. No one, however, would reasonably conclude that ordinary judgments obtained by governmental units are "taxes" and, as such, entitled to bankruptcy priority.

■ The claim in this case is analogous to a judgment for, under the Arizona statute, section 23–907(C), the payment by the Commission to an injured employee "shall act as a judgment against the employer." Following the analysis of *Lorber, Camilli*, and other cases which have addressed this issue, the Commission's judgment against the debtor would fulfill the elements of a "tax" for it imposes a compulsory, pecuniary burden on the debtor and its property to defray the costs of government.

It is not, however, established at a fixed or statutory rate but depends rather upon whatever amount may be required to care for the injured employee. The requirement that a "tax" must be assessed at a fixed rate, therefore, eliminates this claim from the tax priority.

The claim of the Industrial Commission of Arizona is not, therefore, entitled to the priority of 11 U.S.C. section 507(a)(8)(E)(ii) and the debtor's objection to it is sustained.

---

(Bankr.D.Kan.1983); and *In re Beaman*, 9 B.R. 539 (Bankr.D.Or.1980).

5. *See e.g. Bidart Brothers v. The California Apple Commission*, 73 F.3d 925 (9th Cir.1996) which discusses the distinction between fees and taxes.