**In re David Hamblen PARK and Karen Anne Park, Debtors.**

**Bankruptcy No. 96–43021–JFQ.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 10, 1997.

Robert F. Creasia, Milford, MA, for debtors.

John A. Burdick, Burdick & DiLeo, Worsecter, MA, trustee.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

David Hamblen Park and Karen Anne Park (the "Debtors") object to the claim of the Workers' Compensation Trust Fund (the "WCTF") to the extent it asserts status as a claim for excise taxes owed a governmental unit. At issue is whether a claim for reimbursement of workers' compensation benefits paid to an injured employee of an uninsured employer under Massachusetts law constitutes an excise tax claim entitled to priority under 11 U.S.C. § 507(a)(8)(E).[1]

The Debtors operate a masonry contracting business under the name David Park Masonry. In early 1995, they were hired by a homeowner to lay bricks. They employed an individual named Scott Lester to work on the project. On April 20, 1995, Lester was injured in the course of this employment. He applied to the WCTF for compensation for his injuries, as the Debtors, in violation of Mass. Gen. Laws ch. 152, § 25A, did not carry workers' compensation insurance. The WCTF paid Lester benefits in the amount of $19,269.12. The Debtors subsequently filed a voluntary Chapter 7 petition. The WCTF filed a proof of claim asserting an unsecured

---

1. If the claim merits priority under section 507(a)(8)(E), it will be nondischargeable pursuant to section 523(a)(1)(A).

priority claim in the amount of $19,269.12 for excise taxes. The Debtors contend the claim is not for payment of an excise tax and hence is entitled to no priority.

## I. MASSACHUSETTS WORKMEN'S COMPENSATION LAW

In Massachusetts, every employer must carry workmen's compensation insurance "[i]n order to promote the health safety and welfare of employees." Mass. Gen. Laws ch. 152, § 25A. Unlike many states, Massachusetts does not offer state—administered workmen's compensation insurance. A Massachusetts employer may obtain insurance through a private insurer, through membership in a workmen's compensation self-insurance group, or become licensed as a self-insurer. *Id.*

Although the required workmen's compensation insurance is not available through the state, the Massachusetts legislature has created the WCTF to provide benefits and/or reimbursements for seven types of claims. Mass. Gen. Laws ch. 152, § 65(2). The eligible claims listed in the statute include:

(e) payment of benefits resulting from approved claims against employers subject to the personal jurisdiction of the Commonwealth who are uninsured in violation of the chapter....

Mass. Ann. Laws ch. 152, § 65(2) (Law. Co-op.1989 & Supp.1997).

Section 65(8) gives the WCTF the right to recover from the uninsured employer benefits paid to the claimant pursuant to section 65(2)(e), plus reasonable attorney fees.

The WCTF is administrated by the Massachusetts Department of Industrial Accidents. It is funded by assessments levied on employers. Self-insureds and self-insured groups pay the assessments directly to the state treasurer. Privately insured employers are billed for the assessments by their insurers, who in turn transmit the funds to the treasurer quarterly. An employer may choose to opt out of the coverage provided by the WCTF by filing a statement of nonparticipation. By doing so, the employer is relieved of the obligation to pay assessments to the fund. However, "[n]o private employer or group shall be relieved of the requirement to pay assessments levied to fund disbursements under clause (d) or (e)." *Id.* Assessments are calculated yearly and are based, in part, on the amount paid out for workmen's compensation claims during the previous twelve months. Employers may not report assessments as premiums for any tax or regulatory purposes. Mass. Gen. Laws ch. 152 § 65(5). Failure to pay an assessment automatically results in a fine. In addition, the Commissioner may establish a Commonwealth lien on any employer to collect unpaid assessments and fines. *Id.*

If the WCTF pays benefits to a claimant under clause (e), "it may seek recovery from the uninsured employer for an amount equal to the amount paid ... plus any necessary and reasonable attorney fees. Any action by the trust fund to seek recovery from the uninsured employer shall be commenced within twenty years of the claimant's filing a claim ..." Mass. Gen. Laws ch. 152 § 65(8).

## II. CHARACTERISTICS OF A TAX UNDER BANKRUPTCY CODE

Section 507(a) of the Bankruptcy Code accords priority to claims for certain enumerated taxes. Included among these taxes is:

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition ...

11 U.S.C. § 507(a)(8)(E) (1994).

The Code does not define "tax" or "excise tax." Whether an obligation is a tax entitled to priority under the Code is a question of federal law. *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941); *State of New Jersey v. Anderson*, 203 U.S. 483, 491, 27 S.Ct. 137, 139–40, 51 L.Ed. 284 (1906); *In re Pan American Paper Mills, Inc.*, 618 F.2d 159 (1st Cir.1980). A state statute's charac-

terization of an obligation as a tax is not dispositive of the true nature of the obligation. *Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029. Nor is the statutorily proscribed remedy dispositive on the issue. *Id.; Anderson*, 203 U.S. at 493, 27 S.Ct. at 140–41. However, courts look to the provisions of the state law giving rise to the claim in order to determine whether the obligation has the incidents of a tax. *See Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029; *In re Adams*, 40 B.R. 545, 547 (E.D.Pa.1984).

The Supreme Court has held that taxes are "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029. Tax obligations differ from ordinary debt because they are not incurred voluntarily pursuant to contract or agreement. *Anderson*, 203 U.S. at 492, 27 S.Ct. at 140. Taxes can be distinguished from penalties in that the purpose of a tax is to support the government, while the purpose of a penalty is to punish unlawful activity. *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, —— U.S. ——, ——, 116 S.Ct. 2106, 2113, 135 L.Ed.2d 506 (1996). Government fees charged for services rendered are not taxes. *County Sanitation District No. 2 of Los Angeles County v. Lorber Indus. of California (In re Lorber)*, 675 F.2d 1062 (9th Cir.1982) (sewer and water user fees charged in amounts proportionate to user's voluntary use of system are not taxes); *In re Adams*, 40 B.R. at 548 (inherent character of sewer and water rents involves implied agreement to pay for sewer services). User fees are meant to restore to the government the costs of the benefits supplied, rather than to produce general revenues. *See Brock v. Washington Metropolitan Area Transit Authority*, 796 F.2d 481, 485 (D.C.1986).

Since the *Anderson* and *Feiring* decisions, courts have continued to refine and restate the definition of a tax. The Ninth Circuit

has defined a tax for bankruptcy purposes as:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) imposed by, or under authority of the legislature;

(c) for public purposes, including the purposes of defraying expenses of government or undertaking authorized by it;

(d) under the police or taxing power of the state.

*In re Lorber*, 675 F.2d at 1066. The *Lorber* test has itself been restated. Because most governmental assessment schemes will satisfy the second and fourth prongs of the *Lorber* test, some courts view taxes as "involuntary exactions for a public purpose, and 'non-taxes' ... to be voluntary payments for a private benefit." *In re S.N.A. Nut Co.*, 188 B.R. 392, 394 (Bankr.N.D.Ill.1995); *see also In re Jenny Lynn Mining Co.*, 780 F.2d 585, 589 (6th Cir.1986).

Courts have expressed concern that the *Lorber* test is inadequate to distinguish a wide range of governmental fees and charges from true taxes.[2] *See, e.g., In re Suburban Motor Freight, Inc. ("Suburban I")*, 998 F.2d 338 (6th Cir.1993) (government uses all monies collected for the public purpose of defraying expenses; thus if public purpose is determining tax factor, all monies collected would be taxes); *In re Freymiller Trucking, Inc.*, 194 B.R. 914, 915 (Bankr.W.D.Okla. 1996) (stating necessity to "distinguish 'taxes' from the myriad of other compulsory charges, assessments, fees, and debts collected by governmental units from persons and used to defray the costs of government"). The Sixth Circuit, affirming *Suburban I*, addressed these concerns, particularly in light of bankruptcy policy. Noting that "equality of distribution among creditors is a central policy of the Bankruptcy Code" and "priority claims must be carefully limited since every such claim reduces the fund available to gen-

---

**2.** Isolating unique tax characteristics has proved difficult. The Supreme Court has noted that "[c]riminal fines, civil penalties, civil forfeitures, and taxes all share certain features: they generate government revenues, impose fiscal burdens on individuals, and deter certain behavior." *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 778, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994).

434

eral creditors," the court narrowed the eligibility for tax priority status by adding two elements to the *Lorber* test. *In re Suburban Motor Freight, Inc.*, 36 F.3d 484, 487–89 (6th Cir.1994) ("*Suburban II*"). First, the exaction must be "universally applicable to similarly situated entities," thus ensuring that the burden and benefit of the exaction enures to the general public, and not to a discrete entity. *Id.* at 488–89. Second, granting priority status to a government claim must not "disadvantage private creditors with like claims." *Suburban II*, 36 F.3d at 489.

Still other courts favor a totality test. *See. e.g. Bell v. Brown, (In re Payne)*, 27 B.R. 809 (Bankr.D.Kan.1983) (even though *Lorber* test met, the nontax characteristics of obligation outweighed tax characteristics); *In re Columbia Packing*, 34 B.R. 403, 404, (Bankr. D.Mass.1983) (obligation did not carry tax characteristics of direct assessment by state or statutory remedy of automatic lien upon default). And at least one court has revived the tax characteristic first set forth in *Anderson*—that a tax must be assessed at a fixed rate set by statute. *In re Freymiller Trucking, Inc.*, 194 B.R. at 915 ("I am unable to think of a 'tax' ... that is not based on a percentage of something, be it income, sales, corporate capital, or the value of property, a gift or inheritance.").

## III. NATURE OF EXCISE TAXES

In determining whether an obligation constitutes an *excise* tax, courts have first applied, as a threshold, one of the tests for a "tax" generally. In addressing the "excise" part of the phrase, courts use a range of definitions, some broader than others. *E.g. Patton v. Brady*, 184 U.S. 608, 618, 22 S.Ct. 493, 496, 46 L.Ed. 713 (an excise is an imposition "levied sometimes upon the consumption of a commodity, sometimes upon the retail sale of it, and sometimes upon the manufacture of it."); *Suburban II*, 36 F.3d at 487 n. 2 (excise taxes are indirect assessments based on a transaction); *State of Ohio, Bureau of Workers' Compensation v. Tri-Manufacturing and Sales Co., (In re Tri-Manufacturing and Sales Co.)*, 82 B.R. 58, 59 (quoting Black's, 5th edition, an excise is "a tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege."); *Beaman*, 9 B.R. at 541 (an excise is "any form of taxation which is not a burden laid directly upon persons or property."); *In re Sacred Heart Hospital of Norristown*, 190 B.R. 38, 44 (Bankr.E.D.Pa. 1995) ("every 'excise tax' is by its very nature a 'user fee.' ").

Excise taxes have been traditionally imposed upon alcohol, tobacco, fuel, and luxuries. *See Patton*, 184 U.S. at 617, 22 S.Ct. at 496. Excise taxes include "sales taxes, estate and gift taxes, gasoline and special fuel taxes and wagering and truck taxes." 124 Cong. Rec. H11113 (Sept. 28, 1978); § 17430 (Oct. 6, 1978). Excise taxes have been referred to as "privilege taxes" which arise "upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand is lacking." 71 Am.Jur.2d *State and Local Taxation* § 28 (1973). *See also In re Tri-Manufacturing and Sales Co.*, 82 B.R. at 60.

■ Many courts do not engage in any substantive analysis of the "excise" portion of the phrase once an exaction has been determined to be a tax generally under the *Lorber* or other tests. This is apparently because the *Anderson, Feiring* line of cases evolved under the Bankruptcy Act. The Act granted priority status to "all taxes legally due and owing by the bankrupt to the United States, State, county, district or municipality" without specifying excise or other types of taxes. Bankruptcy Act of 1898, § 64. For those courts employing the *Lorber* and *Suburban* tests, whether or not an obligation is a tax often turns on the "involuntary" nature of the obligation. Some of these decisions involve reimbursement claims under workers' compensation statutes. *Compare, e.g. Industrial Commission of Arizona v. Camilli*, 94 F.3d 1330, 1333 (9th Cir.1996), *rev'g* 182 B.R. 247 (9th Cir. BAP 1995) (reimbursement claim was tax claim, in part because debtor's obligation to repay workers' compensation benefits was "wholly beyond the control of the debtor") *with Camilli v. Industrial Comm'n of Arizona*, 182 B.R. 247, 251 (9th Cir. BAP 1995) (reimbursement obligation

not a tax obligation as it arose from employer's "voluntary decision not to provide insurance"). However, as discussed above, an *excise* tax can be voluntarily incurred. Thus, involuntariness is not an appropriate test of whether an obligation qualifies for priority under § 507(a)(8)(E).[3]

## IV. WORKMEN'S COMPENSATION CLAIMS AS EXCISE TAXES

State claims for monies owed under workers' compensation statutes can be divided into two categories: those for unpaid premiums; and those for reimbursement of monies paid to injured employees of uninsured employers. A determination of whether a claim is one for an excise tax depends largely on the makeup of the particular state workers' compensation scheme. Claims for unpaid premiums are generally found to be priority tax claims when a state requires all employers to purchase workers' compensation insurance from the state, with no private insurance option. *See e.g., Suburban II,* 36 F.3d at 488 (premiums are taxes where state's system is "centralized and universal" and employers cannot purchase private insurance); *In re Pan American Paper Mills,* 618 F.2d 159, 160 (1st Cir.1980) (taxes paid into Puerto Rico's "comprehensive, compulsory insurance system" are taxes); *In re Metro Transportation Co.,* 117 B.R. 143, 154 (Bankr.E.D.Pa.1990) (premiums paid to fund are not taxes or mandatory payments where employers may buy private insurance or self-insure). *But see In re Chateaugay Corp.,* 177 B.R. 176, 183–84 (S.D.N.Y.1995) (premiums are taxes even though private insurance option available).

The case law on whether reimbursement claims are excise taxes is unsettled. The First Circuit has not addressed this issue. In *Pan American,* a workers' compensation claim case under the prior Act, the court held that unpaid workers' compensation premiums were taxes, and therefore the government held a priority claim. *In re Pan American,*

618 F.2d at 163. While the Puerto Rico Fund also had a reimbursement claim in the debtor's case, it filed this claim as a general unsecured claim. Hence, the tax issue with regard to reimbursement claims was not decided.

Courts that have ruled reimbursement claims to be excise tax claims consider the *Lorber* test, public policy, and the existence of a statutory lien securing the claim. *See In re Camilli,* 94 F.3d 1330 (9th Cir.1996); *In re Olga Coal Co.,* 194 B.R. 741 (Bankr.S.D.N.Y. 1996); *Waldo v. Montana Dep't of Labor and Indus. Uninsured Employers Fund (In re Waldo),* 186 B.R. 118 (Bankr.D.Mont.1995); *In re Chateaugay Corp.,* 177 B.R. 176 (S.D.N.Y.1995); *In re Beaman,* 9 B.R. 539 (Bankr.D.Or.1980). Courts going the other way emphasize the *Suburban* test, bankruptcy policy, the possibility of double recovery, the obligation's nontax characteristics, the absence of a statutory lien, and the similarity of reimbursement claims to subrogation tort claims. *See Suburban II,* 36 F.3d 484 (6th Cir.1994); *In re Freymiller,* 194 B.R. 914 (Bankr.W.D.Okla.1996); *In re Payne,* 27 B.R. 809 (Bankr.D.Kan.1983).

The *Lorber* test alone is easily satisfied in the context of reimbursement claims, but application of the two additional *Suburban* elements yields differing results. The requirement that priority status must not prejudice private creditors with like claims is met in states where separate, state-administered funds are the sole source of benefits paid on behalf of uninsured employers. *See Camilli,* 94 F.3d at 1334 (no private creditors have similar claims where "[n]o private entity competes with [fund] to pay 'insurance' claims for which no insurance has been bought"); *Waldo,* 186 B.R. at 123 (special fund is "purely public scheme," to which there are no "private alternatives"); *Suburban II,* 36 F.3d at 489 (finding inequality among creditors when state permits payment of benefits from private sources such as

---

3. While the test for taxes has taken on an "involuntary" requirement, the original *Anderson/Feiring* definitions referred to pecuniary burdens imposed regardless of the obligor's consent. *See Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029; *Anderson,* 203 U.S. at 492, 27 S.Ct. at 140. *See*

*also In re Freymiller,* 194 B.R. 914, 916 (Bankr. W.D.Okla.1996) ("Anderson ... makes it clear that consent of the taxpayer is not always the determining factor in deciding whether or not governmental assessments are 'taxes' ").

bonded self-insurance); *Olga Co.*, 194 B.R. at 749 (surety claims not entitled to same treatment as government claims because sureties are compensated for risks and sovereign power of state must be distinguished from rights of private citizens).

The *Suburban* test also requires that a tax be universally applied to all similarly situated entities. Courts draw similarly situated classes narrowly or broadly, depending upon their willingness to grant section 507(a)(8)(E) priority status. *Compare Camilli*, 94 F.3d at 1334 (under Arizona law there is "universal" obligation to compensate employees of uninsured employers) *with Suburban II*, 36 F.3d at 489 (employer's "liability arises solely by virtue of its default, and is not a liability 'universally applicable to similarly situated persons or firms' ").

The interplay between the specific characteristics of a state's workmen's compensation scheme and policy considerations, both local and federal, plays a role. The Sixth Circuit, in *Suburban II* noted that premiums collected under Ohio's monopolistic workers' compensation System were the source of payments made to employees of uninsured employers. 36 F.3d at 486. The Sixth Circuit had earlier held that claims for unpaid workers' compensation premiums were entitled to priority as excise taxes. *See Suburban I*, 998 F.2d 338 (6th Cir.1993). The *Suburban II* court observed that granting priority status to both premiums and reimbursement claims would provide the state with a double remedy. *See Suburban II*, 36 F.3d at 486. This result would be particularly undesirable in light of fundamental bankruptcy policy which mandates equal distributions among creditors and the need to narrowly construe priority claims. *Id.* at 487.

The Ninth Circuit, in *Camilli*, distinguished Arizona's workers' compensation system from the *Suburban II* system, pointing out that Arizona's scheme is not a state monopoly, so that claims for unpaid premiums would not receive excise tax priority. 94 F.3d at 1334. Thus, the threat of overcompensation to the state claimant, and the attendant violation of bankruptcy policy, was not present. This allowed the *Camilli* court

to emphasize the state's public policy concern of providing a means to "offset state expenditures" and "provide universal availability of workers' compensation benefits to employees in the state." *Id.* at 1333.

Lastly, in denying priority status to reimbursement claims, courts have noted the similarity between these and subrogation claims. *See Suburban II*, 36 F.3d at 486; *In re Payne*, 27 B.R. at 817.

## V. APPLICATION OF THESE PRINCIPLES TO THE PRESENT CASE

 I conclude that the WCTF claim for reimbursement of benefits paid under section 65(2) does not qualify for priority status as an excise tax. All Massachusetts employers are required to purchase workmen's compensation insurance (or to become self-insured), but this insurance cannot be purchased from the Commonwealth. All private Massachusetts employers are also required to pay "assessments" made by the WCTF to cover claims which arise under section 65(2), including claims of injured employees whose employers are uninsured. In contrast, only uninsured employers are subject to reimbursement liability. True, this reimbursement debt is a pecuniary burden imposed by Massachusetts to defray a cost of government. And granting priority for the WCTF's claim would not prejudice private creditors with like claims, because the WCTF has a monopoly on section 65(2) insurance. The reimbursement burden is not, however, universally applied to all similarly situated constituents. All Massachusetts employers pay WCTF assessments, but only some pay reimbursement claims. They are uninsured employers with an employee who has been injured in the course of employment, whose injured employee files a claim with and is paid by the WCTF. To craft such a narrow "similarly situated" class renders the "universally applied" requirement meaningless.

Moreover, reimbursements to the WCTF are not revenues applied to the general welfare, nor does the WCTF's continued existence rely on their collection. The state workmen's compensation system was enacted "[in] order to promote the health, safety

and welfare of employees." Mass. Gen. Laws ch. 152, § 25A. The bulk of all workmen's compensation insurance is provided through private insurance, without any monies passing to the state. For those enumerated claims handled through the WCTF, the state charges assessments figured at a statutorily prescribed formula which is designed to keep the WCTF solvent and capable of paying claims of injured employees of uninsured employers. Thus, the WCTF's viability is not dependant upon reimbursements, and public policy initiatives are not threatened by nonpriority treatment of reimbursement claims in bankruptcy. Conversely, granting priority treatment to reimbursement claims would likely result in double recovery, given the tax-like nature of WCTF assessments. Furthermore, unlike the Arizona statute in *Camilli*, the Massachusetts Workmen's Compensation statute does not provide for an automatic lien to arise upon the payment of benefits under section 65(2).

For these reasons, and in keeping with central bankruptcy policies, I sustain the Debtor's objection and hold the WCTF claim is a general unsecured claim.