**In re Michael HYNES, Debtor.**

**Michigan Uninsured Employers' Security Fund, Plaintiff,**

v.

**Michael Hynes, Defendant.**

**Bankruptcy No. HT 97–04128.
Adversary No. 97–88332.**

United States Bankruptcy Court,
W.D. Michigan.

Aug. 18, 1998.

Paul I. Bare, Traverse City, Michigan, for debtor.

Caleb B. Martin, Jr., Assistant Attorney General, Detroit, Michigan, for Michigan Uninsured Employers' Security Fund.

## Opinion

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter comes before the court for a decision as a matter of law. The factual background of the matter is not in dispute. The narrow question to be answered is whether the liability owed by the debtor to the Michigan Uninsured Employers' Security Fund ("Fund") constitutes an excise tax entitled to priority under 11 U.S.C. § 507(a)(8)(E) and not subject to discharge

under § 523(a)(1)(A). The agreed facts are as follows.

## BACKGROUND

The debtor owned a business in Michigan called Bayshore Aerial Bucket Service ("Bayshore"). Michigan law requires employers to provide workers' disability compensation insurance for employees by either purchasing an insurance policy or obtaining authority from the Michigan Bureau of Workers' Disability Compensation ("Bureau") to be self-insured. *See*, M.C.L.A. § 418.611, M.S.A. § 17.237(611). Unlike many states, there is no state-administered workers' compensation insurance carrier in Michigan. Michigan does, however, maintain the Fund which, pursuant to M.C.L.A. § 418.532, M.S.A. § 17.237(532) has the responsibility to pay workers' compensation benefits to the disabled employees of uninsured Michigan employers.

On September 5, 1995, Dennis Little, an employee of Bayshore suffered a work related injury. On that date, Bayshore did not have a workers' compensation insurance policy nor had it been authorized by the Bureau to be self-insured. Mr. Little filed a claim for workers' disability compensation against the Fund. On April 25, 1997, a workers' compensation Magistrate approved a redemption (settlement) between the Fund and Mr. Little in the amount of $9,400.00

On May 12, 1997, the debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On August 5, 1997, the Fund filed its "Complaint to Object to Discharge." The Fund's Complaint alleges that, pursuant to Michigan law, the debtor has liability to the Fund for treble damages for both the amount of benefits paid ($9,400.00 × 3 = $28,200.00) and the administrative expense incurred in processing the claim ($2,820.00 × 3 = $8,460.00). The total claim made by the Fund is $36,660.00 ($28,200.00 + $8,460.00). *See*, M.C.L.A. § 418.532(12), M.S.A. § 17.237(532)(12).

The Fund's Complaint also alleges that the claim is entitled to priority treatment as an excise tax pursuant to § 507(a)(8)(E), and that the claim is not subject to discharge pursuant to §§ 727(b) and 523(a)(1). On the other hand, the debtor contends that the Fund's claim is not a tax and is therefore dischargeable in bankruptcy.

## ANALYSIS

The provisions for priorities among a bankrupt debtor's claimants are found in § 507. That section reads, in relevant part:

(a) The following expenses and claims have priority in the following order:

. . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

. . . .

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition[.]

11 U.S.C. § 507(a)(8)(E) (1998).

The Fund contends that a provision of state law which permits it to collect from Bayshore, as an uninsured employer, the benefits paid to injured employees is such an "excise tax." For § 507 purposes, the payment of benefits by the Fund would be a transaction for which a return was not required which occurred during the three years immediately preceding the date of the petition. The key question here is whether this particular provision of state law is an "excise tax." The state law upon which the Fund relies reads as follows:

For injuries occurring on or after June 29, 1990, and before the effective date of the 1996 amendatory act that amended this section, the *trustees are authorized to seek reimbursement for any money paid or owed* to an employee or dependents of a deceased employee from *an uninsured employer that shall also be liable to the uninsured employers' security fund for both of the following:*

(a) An amount equal to 3 times the benefits to which an employee or dependents of a deceased employee are entitled under this act which have been paid or are to be paid to an employee or dependents of a deceased employee by the fund.

(b) An amount equal to 3 times any actual and reasonable expenses incurred in processing a claim. (Emphasis added).

M.C.L.A. § 418.532(12), M.S.A. § 17.-237(532)(12).

A plain reading of this statute indicates that it has two components. First, the Fund can seek "reimbursement for any money paid or owed" to the injured employee. Second, the uninsured employer "shall also be liable to the ... fund" for treble damages on both the amount of benefit paid as well as the actual and reasonable expenses incurred in processing the claim.[1]

■■■ In deciding whether M.C.L.A. § 418.532(12) creates an "excise tax," I must look to federal law. As recently stated in *In re Park*, 212 B.R. 430 (Bankr.D.Mass.1997):

The [Bankruptcy] Code does not define "tax" or "excise tax." Whether an obligation is a tax entitled to priority under the Code is a question of federal law. A state statute's characterization of an obligation as a tax is not dispositive of the true nature of the obligation. Nor is the statutorily proscribed remedy dispositive on the issue. However, courts look to the provisions of the state law giving rise to the claim in order to determine whether the obligation has the incidents of a tax. (citations omitted).

212 B.R. at 432–433.

*Park* points out that the Supreme Court has held that taxes are "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Id.* at 433. (citing *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941)). Tax obligations differ from ordinary debt because they are not incurred voluntarily pursuant to contract or agreement. *Id.* (citing *State of New Jersey v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906)).

Since the *Anderson* and *Feiring* decisions, courts have continued to refine and restate the definition of a tax. The Ninth Circuit defined a tax for bankruptcy purposes as:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) Imposed by, or under the authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

*In re Lorber*, 675 F.2d 1062, 1066 (9th Cir. 1982).

Some courts, including the Sixth Circuit, have expressed concern that the *Lorber* test is inadequate to distinguish a wide range of governmental fees and charges from true taxes. *In re Suburban Motor Freight, Inc.*, 998 F.2d 338 (6th Cir.1993) ("*Suburban I*"); *In re Suburban Motor Freight, Inc.*, 36 F.3d 484 (6th Cir.1994) ("*Suburban II*"). The Sixth Circuit in these two decisions concluded that the *Lorber* elements, if considered both necessary and sufficient to qualify an obligation as a "tax," would result in too many priorities of debts to the government over like claims of private creditors. The Sixth Circuit held that government entities should not be treated more favorably than private creditors with similar claims. *See, Suburban I* at 342; *Suburban II* at 488.

As succinctly summarized in *Industrial Commission of Arizona v. Camilli (In re Camilli)*, 94 F.3d 1330 (9th Cir.1996):

In *Suburban I*, the Sixth Circuit considered the obligation of the debtor to pay premiums to the Ohio Bureau of Workers' Compensation. Under the Ohio workers' compensation scheme, ... all employers were required to pay premiums to the State Bureau of Workers' Compensation,

---

1. For unexplained reasons, the Fund seeks an amount equal to only the treble damages portion of M.C.L.A. § 418.532(12) and not the amount equal to the underlying reimbursement *plus* treble damages.

and private insurance companies were not permitted to offer workers' compensation insurance. Central to the court's holding that the premium obligation was a "tax" was the fact that employers could have no similar obligations to a private carrier. Taking the view that the "public purpose" element enunciated in *Lorber*, standing alone, reached too broadly, the court refined *Lorber*'s "public purpose" criterion to require (1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to a government claim not disadvantage private creditors with like claims. *See Suburban I*, 998 F.2d at 342. Because the premium obligation to the state was, in Ohio, a universal obligation for all employers except self-insurers, and because according priority treatment to those claims did not disadvantage any private creditors with similar claims, *Suburban I*, held that the premium obligations were a tax.

In *Suburban II*, however, the same court was faced with the Bureau's claim, not for premiums, but for reimbursement of payments made to workers' compensation claimants. The payments had been necessitated by Suburban's failure to pay premiums when it was a participant in the state insurance fund, and its failure to pay claims which arose when it was a self-insured employer. The Sixth Circuit decided that such claims for reimbursement did not qualify as a "tax" within the meaning of the Bankruptcy Code.

*Suburban II* dealt first with the state's claim for reimbursement of compensation payments it made when the debtor was a fund participant but had defaulted on its premium obligations. The court reasoned that, once it had held in *Suburban I* that the premium obligations themselves were entitled to priority as a tax, the court would not accord priority to the Bureau's claim for reimbursement as well. The Sixth Circuit concluded that allowing priority in bankruptcy for both premiums and claims payments would overcompensate the state without benefitting the general public.

*Suburban II* also dealt with claims for reimbursement brought about by Suburban's default on obligations to employees during the period when it was a declared self-insurer under the Ohio law. Again, relying on the specific provisions of Ohio law, the court noted that Ohio law required self-insurers to post a bond, and that sureties had contributed, along with the state's surplus fund, to compensate Suburban's injured employees when Suburban defaulted. To allow priority status to the state fund, the court concluded, would be unfair to private sureties.

94 F.3d at 1334.

■ In applying the *Lorber* test, as modified by *Suburban I*, it seems to me that the claim for reimbursement in this instance would be an excise tax. Under the Michigan scheme, the Fund's claim for reimbursement serves a public purpose, namely to defray the expenses of an undertaking of government that undertaking being the supplying of workers' compensation benefits to employees of uninsured employers. I find, therefore that all four prongs of the *Lorber* test are met. In addition, I find that the pecuniary obligation (*i.e.* to reimburse the Fund) is universally applicable to uninsured employers. Finally, I find there to be no private creditors with like claims, so according priority treatment to the Fund does not disadvantage them. Under the facts before me, I find that the two modifications made by *Suburban I* to the *Lorber* test are also met. Reimbursement to the Fund under M.C.L.A. § 418.532(12) should be entitled to priority as a tax However, reimbursement is only one portion of the Michigan statute. The other portion consists of the treble penalties which the Fund is authorized to seek under subsections (a) and (b) of that statute. The priority of the treble penalty provisions is a separate issue from that of reimbursement.

■ According to a recent Supreme Court decision, taxes can be distinguished from penalties in that the purpose of a tax is to support the government, while the purpose of a penalty is to punish unlawful activity. *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224, 116 S.Ct. 2106, 2113, 135 L.Ed.2d 506 (1996). In

that case, the Supreme Court analyzed whether a provision of the tax code, namely 26 U.S.C. § 4971(a) [2], was an "excise tax" for the purpose of § 507(a)(7)(E) (1988) [3] and concluded:

> Given the patently punitive function of § 4971, we conclude that § 4971 must be treated as imposing a penalty, not authorizing a tax. Accordingly, we hold that the "tax" under § 4971(a) was not entitled to seventh priority as an "excise tax" under § 507(a)(7)(E), but instead is, for bankruptcy purposes, a penalty to be dealt with as an ordinary, unsecured claim.

518 U.S. at 226, 116 S.Ct. at 2114.

■ Based on this language I find that the treble penalty provisions of M.C.L.A. § 418.532(12) do not authorize a tax, but rather impose a penalty. Such a penalty should not be accorded eighth priority as an "excise tax" under § 507(a)(8)(E). For bankruptcy purposes, those penalties will be dealt with as an ordinary, unsecured claim.

Having found that the reimbursement portion (*i.e.* $9,400.00) of the debt to the Fund is an "excise tax" to be accorded eighth priority under § 507, with the remainder of the claim a non-priority unsecured debt based on the treble penalties provision of the state statute, I now turn to the issue of the nondischargeability of each portion.

■ The appropriate starting point is the language of the Bankruptcy Code itself, specifically § 523 which sets forth exceptions to discharge. That section of the Bankruptcy Code reads, in relevant part:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax ...—
>
> (A) of the kind ... specified in section 507(a)(8) of this title, whether or not a

claim for such tax was filed or allowed[.]

11 U.S.C. § 523(a)(1)(A).

Applying the plain language of § 523 to the facts of this case, it is apparent that the debtor's discharge under § 727 does not discharge him of the "excise tax" liability of $9,400.00 which I have already held to be an eighth priority claim.

■ However, exceptions to discharge are confined to those plainly expressed in the Bankruptcy Code. *In re Platter*, 140 F.3d 676, 680 (dischargeability of a debt "to a spouse, former spouse, or child of the debtor" under § 523(a)(5)). Such exceptions are narrowly construed in favor of the debtor. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Courts will narrowly construe the language of § 523 to assure the debtor has an opportunity for a fresh start. *Platter* at 680 (construing the language of § 523(a)(5)).

■ In this instance, the treble penalties portion of the Michigan statute is not an excise tax "of the kind ... specified in section ... 507(a)(8)" for the reasons that I have stated. The exception to discharge found in § 523(a)(1) would, therefore, not be applicable. The treble penalties portion of the Fund's claim is subject to discharge under § 727.

## CONCLUSION

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

For the foregoing reasons, summary judgment in favor of the plaintiff is GRANTED in part, and DENIED in part. The amount of $9,400.00, which represents reimbursement to the Fund of benefits paid to Mr. Little, is accorded eighth priority as an "ex-

---

**2.** The Employee Retirement Income Security Act of 1974 obligates employers to make certain annual funding contributions to pension plans they sponsor. Section 4971(a) of the Internal Revenue Code imposes a 10 percent "tax" on any "accumulated funding deficiency."

**3.** Section 304(c) of the Bankruptcy Reform Act of 1994 added a new seventh priority and moved this provision from seventh (§ 507(a)(7)) to eighth (§ 507(a)(8)), without altering any of the language relevant to this case.

cise tax" under 11 U.S.C. § 507(a)(8)(E) and is not subject to discharge pursuant to § 523(a)(1)(A). The remainder of the Fund's claim which represents treble penalties, however, will neither be afforded priority status under § 507(a)(8)(E) nor excepted from discharge under § 523(a)(1).

An Order will be entered in accordance with this Opinion.