# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 99-6031ND

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Steven L. Voightman | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| North Dakota Workers | * | Appeal from the United States |
| Compensation Bureau, | * | Bankruptcy Court for the |
| | * | District of North Dakota |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Steven L. Voightman, | * | |
| | * | |
| Defendant-Appellant, | * | |
| | * | |
| Voightman Trucking and | * | |
| James River Dispatch, | * | |
| | * | |
| Defendants. | * | |

———

Submitted:  August 24, 1999
Filed:  September 24, 1999

———

Before KOGER, Chief Judge, SCHERMER, and DREHER, Bankruptcy Judges.

———

DREHER, Bankruptcy Judge

Debtor Steven L. Voightman appeals the decision of the bankruptcy court,[1] which found that the Debtor's unpaid workers' compensation premiums were entitled to priority under 11 U.S.C. § 507(a)(8)(E) and, thus, were nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A). We affirm.

I.      BACKGROUND

The facts in this case are largely undisputed. Debtor Steven Voightman ("Debtor") operated a trucking business known as Voightman Trucking, which transported various commodities for farmers and others. Debtor first hired employees to work in his business in July of 1993, and at that time became subject to the provisions of the North Dakota Workers Compensation Act ("Act"). Under the Act, farmers directly employing workers in the same capacity as Debtor's employees would not have to carry workers' compensation insurance because the Act excludes, *inter alia*, agricultural employment.

The North Dakota Workers Compensation Bureau ("Bureau") assessed Debtor with premiums totaling $19,180.33. The parties agree that the unpaid portion of the assessments totals $15,130.04. After the Debtor filed for bankruptcy relief on August 21, 1998, the Bureau brought an adversary proceeding seeking to have the unpaid premiums declared nondischargeable excise taxes pursuant to Bankruptcy Code §§ 523(a)(1)(A) and 507(a)(8)(E) . The parties stipulated that if the unpaid premiums were nondischargeable, penalties and interest totaling $6,367.88 would also be nondischargeable as compensation for actual pecuniary loss pursuant to Bankruptcy Code § 507(a)(8)(G).

The bankruptcy court, applying a four-part test announced by the Ninth Circuit in County Sanitation Dist. No. 2 v. Lorber Indus. of Cal., Inc. (In re Lorber Indus. of Cal., Inc.), 675 F.2d 1062 (9th Cir. 1982), found that the workers' compensation premiums were entitled to priority as excise taxes under Bankruptcy Code § 507(a)(8)(E) and, accordingly, were nondischargeable pursuant to § 523(a)(1)(A). In this appeal, the Debtor argues that the bankruptcy court applied an outdated test and that, using a more recent test adopted by the

---

[1]The Honorable William A. Hill, United States Bankruptcy Judge for the District of North Dakota.

Sixth Circuit in <u>Ohio Bureau of Workers' Compensation v. Yoder</u> (<u>In re Suburban Motor Freight, Inc.</u>), 36 F.3d 484 (6th Cir. 1994) ("<u>Suburban II</u>"), the workers' compensation premiums would be dischargeable. The Bureau contends that the bankruptcy court did not apply the improper test and, even if the bankruptcy court used the more recent <u>Suburban II</u> test, the outcome would not change.

## II.    STANDARD OF REVIEW

The bankruptcy court's decision that the workers' compensation premiums qualify as excise taxes under the Bankruptcy Code is a conclusion of law over which we exercise de novo review. <u>Sacred Heart Hosp. v. Pennsylvania Dept. of Labor & Industry</u> (<u>In re Sacred Heart Hosp.</u>), 209 B.R. 650, 653 (E.D. Pa. 1997); <u>Oregon Fryer Comm'n v. Robert K. Morrow, Inc.</u> (<u>In re Belozer Farms, Inc.</u>), 199 B.R. 720, 723 (B.A.P. 9th Cir. 1996); <u>see</u> <u>Mosbrucker v. United States</u> (<u>In re Mosbrucker</u>), 227 B.R. 434, 436 (B.A.P. 8th Cir. 1998) (exercising de novo review over a similar conclusion under § 507(a)(8)(C) of the Bankruptcy Code).

## III.    DISCUSSION

Bankruptcy Code § 523(a)(1)(A) provides that any debt for a tax "of the kind and for the periods specified in section . . . 507(a)(8)" is not dischargeable. 11 U.S.C. § 523(a)(1)(A) (1994). The relevant portion of § 507(a)(8) provides priority for

> an excise tax on –
>> (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
>> (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition. . . .

11 U.S.C. § 507(a)(8)(E).

Pursuant to this statutory scheme, if the obligation is a tax, it must fit within the specific definition of an "excise tax" in order to be excepted from the Debtor's discharge.

3

An excise tax is an indirect tax, one not directly imposed upon persons or property but imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.  New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund, 886 F.2d 714, 719 (4th Cir. 1989); In re Payne, 27 B.R. 809, 813 (Bankr. D. Kan. 1983).  The obligation in question here, if it is a tax, would qualify as an excise tax because it is an indirect assessment that arises through the transaction or act of employing.  New Neighborhoods, 886 F.2d at 719; see Ohio Bureau of Workers' Compensation v. Yoder (In re Suburban Motor Freight, Inc.) ("Suburban II"), 36 F.3d 484, 488 n.2 (6th Cir. 1994); Yoder v. Ohio Bureau of Workers' Compensation (In re Suburban Motor Freight, Inc.) ("Suburban I"), 998 F.2d 338, 340 n.3 (6th Cir. 1993).  We, therefore, turn to the more fundamental question of whether the Debtor's obligation to the Bureau can be classified as a tax.

The term "tax" is not defined by the Bankruptcy Code.  In re Sacred Heart Hosp., 212 B.R. 467, 471 (E.D. Pa. 1997); In re Park, 212 B.R. 430, 432 (Bankr. D. Mass. 1997). Whether an obligation owed to the government constitutes a tax is a question of federal law. Suburban II, 36 F.3d at 487 (citing New York v. Feiring, 313 U.S. 283, 285 (1941)); New Neighborhoods, 886 F.2d at 718; Sacred Heart Hosp., 212 B.R. at 471; Park, 212 B.R. at 432.  The statute's characterization of the obligation is not controlling.  United States v. Juvenile Shoe Corp. (In re Juvenile Shoe Corp.), 99 F.3d 898, 901 (8th Cir. 1996); New Neighborhoods, 886 F.2d at 718; Park, 212 B.R. at 432-33; In re Metro Transp. Co., 117 B.R. 143, 151 (Bankr. E.D. Pa. 1990).  Thus, the fact that the Act refers to premiums instead of taxes is not dispositive.   Rather, the court must look to the substance of the statute to determine whether the obligation bears the characteristics of a tax.  Feiring, 313 U.S. at 285; Juvenile Shoe Corp., 99 F.3d at 900; Metro Transp., 117 B.R. at 151.

The Supreme Court has defined taxes as "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it."  Feiring, 313 U.S. at 285. See also United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213, 224 (1996); Juvenile Shoe Corp., 99 F.3d at 900.  In short, a payment may be classified as a tax if the state has compelled the payment and if the payment serves a public purpose.  Metro Transp., 117 B.R. at 152 (quoting New Neighborhoods, 886 F.2d at 718).  In contrast to taxes, fees

4

are monies paid to the government incident to a voluntary act that bestows a benefit on the applicant, not shared by other members of society. National Cable Television Ass'n v. United States, 415 U.S. 336, 340-41 (1974); Suburban I, 998 F.2d at 339-40; Sacred Heart Hosp. v. Pennsylvania Dept. of Labor and Indus. (In re Sacred Heart Hosp.), 209 B.R. 650, 654 (E.D. Pa. 1997) ("[A] government's claim looks less like a tax and more like a commercial charge when it involves a fee in exchange for the privilege of engaging in a certain regulated activity not available to the public generally or for the provision of a service which a person may obtain lawfully from others or may provide himself."). Such fees are meant to restore to the government the costs of the benefits supplied, rather than to produce general revenues. Park, 212 B.R. at 433. Several courts have summarized the distinction between taxes and fees by noting that taxes are involuntary exactions for a public purpose and non-taxes are voluntary payments for a private benefit. Park, 212 B.R. at 433 (citing In re S.N.A. Nut Co., 188 B.R. 392, 394 (Bankr. N.D. Ill. 1995); In re Jenny Lynn Mining Co., 780 F.2d 585, 589 (6th Cir. 1986)).

Based upon the Supreme Court's definition, the Ninth Circuit outlined the four elements necessary for classifying an obligation as a tax: (1) an involuntary pecuniary burden, regardless of name, laid upon individuals or property; (2) imposed by, or under authority of the legislature; (3) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and (4) under the police or taxing power of the state. County Sanitation Dist. No. 2 v. Lorber Indus. of Cal., Inc. (In re Lorber Indus. of Cal., Inc.), 675 F.2d 1062, 1066 (9th Cir. 1982). Most government assessments satisfy the second and fourth prongs of the test, Park, 212 B.R. at 433, which is indisputably the case here. Furthermore, the Debtor does not dispute that the workers' compensation premiums satisfy the remaining elements. The premiums are involuntary exactions on employers to serve the public purpose of upholding the prosperity of the state by ensuring the well-being of workers through sure and certain relief to those injured on the job. See N.D. Cent. Code § 65-01-01. Based on the Lorber test and its interpretation of the Supreme Court's definition of taxes, Debtor's unpaid workers' compensation premiums are nondischargeable excise taxes.

While Debtor does not dispute the result under the Lorber test, he maintains that the court must apply a refined version of the test developed by the Sixth Circuit. See Suburban

5

II, 36 F.3d at 488-89. Citing concern that the public purpose portion of the <u>Lorber</u> test would lead to classifying all government debts as taxes, the Sixth Circuit refined the third element to include two additional requirements: (1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to the government claim not disadvantage private creditors with like claims. <u>Suburban II</u>, 36 F.3d at 488.

Debtor argues that the Act is not universally applicable to all similarly situated entities. Debtor's argument stems from the fact that farmers are not required to pay premiums under the Act although they employ workers in the same capacity as Debtor's employees. That argument is unpersuasive. Many taxes are imposed on a subclass of taxpayers and do not lose their identity as taxes merely because they are not imposed beyond the confines of that class. <u>New Neighborhoods</u>, 886 F.2d at 719 n.4; <u>Sacred Heart Hosp.</u>, 212 B.R. at 474. The Act applies to a certain subclass of employers. While agricultural employees may perform the same duties as Debtor's employees, the North Dakota Supreme Court has specifically held that the exclusion of agricultural employers from the Act has a rational basis. <u>Haney v. North Dakota Workers Compensation Bureau</u>, 518 N.W.2d 195, 202 (N.D. 1994).[2] Accordingly, agricultural employers are not similarly situated with the Debtor because they occupy a protected position in North Dakota. Thus, they permissibly lie outside the subclass of employers covered by the Act.

Debtor also argues that granting priority to the Bureau could disadvantage private entities with like claims. Debtor speculates that if he employed workers in Minnesota and obtained workers' compensation insurance, the private insurance provider in Minnesota would not receive the same treatment as the Bureau. Debtor's argument in this respect is also unpersuasive. Numerous courts, including the court that announced the test that Debtor relies upon, have granted priority to workers' compensation premiums in monopolistic states despite the fact that many other states have the option of private insurance. <u>See</u>, <u>e.g.</u>,

_____

[2] Debtor cites <u>Benson v. North Dakota Workmen's Compensation Bureau</u>, 283 N.W.2d 96 (N.D. 1979) as authority that the exclusion of agricultural employment from the Act is an unconstitutional denial of equal protection. However, the <u>Haney</u> court expressly overruled the <u>Benson</u> decision. <u>Haney</u>, 518 N.W.2d at 199.

Suburban I, 998 F.2d at 341-42. Debtor's argument would prevent every state's workers' compensation premiums from being classified as taxes merely because other states' systems allow for private insurance.

In sum, even if the refined Suburban II test is the proper standard, Debtor's unpaid workers' compensation premiums still qualify as taxes. The Act is universally applicable to all similarly situated entities and according priority treatment to the Bureau does not disadvantage any private creditors with like claims.

This result also conforms to the general trend of cases involving workers' compensation premiums. Generally, courts determining whether premiums under a state's workers' compensation scheme should be classified as excise taxes have looked at whether the scheme requires an employer to subscribe to a state-administered insurance plan or whether the employer may purchase private insurance. Workers' Compensation Trust Fund v. Saunders, 234 B.R. 555, 562 (Bankr. D. Mass. 1999). When a state requires all employers to purchase workers' compensation insurance from the state, with no private insurance option, the premiums fairly consistently have been classified as priority taxes. Industrial Comm'n v. Camilli (In re Camilli), 94 F.3d 1330, 1335 (9th Cir. 1996); Suburban I, 998 F.2d at 340 ("The theory goes that where the State has intended to supplant all private forms of workers' compensation insurance, to centralize the system and to force all employers to participate on pain of legal sanctions, the coercive and universal nature of the state program makes payments it collects more akin to taxes than to fees or insurance premiums, which are paid voluntarily."); Saunders, 234 B.R. at 562; Park, 212 B.R. at 435; Waldo v. Montana Dept. of Labor & Indus., 186 B.R. 118, 122 (Bankr. D. Mont. 1995). The North Dakota system is monopolistic. All employers must pay premiums into the state fund, with no option of private insurance. See N.D. Cent. Code § 65-04-04. Therefore, the prevailing rule regarding the classification of workers' compensation premiums also supports the conclusion that Debtor's unpaid premiums are nondischargeable priority excise taxes.

## CONCLUSION

Based on the foregoing, we hereby affirm the decision of the bankruptcy court.

A true copy.

Attest:

       CLERK, U.S. BANKRUPTCY APPELLATE PANEL
       FOR THE EIGHTH CIRCUIT