**In re TOC ASSOCIATES, Debtor.**

**PNC BANK, NATIONAL ASSOCIATION, Plaintiff,**

v.

**BUCKS COUNTY TAX CLAIM BUREAU and Ray Wall, Treasurer of Bensalem Township, Defendants.**

**Bankruptcy No. 91–23375.
Adv. No. 93–2117.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia.

April 24, 1995.

---

to be a noncore proceeding. *See* 28 U.S.C. § 157(c)(1); *In re Fleet*, 103 B.R. 578, 587 n. 5 (E.D.Pa.1989); and *After Six, supra,* slip op. at *1.

William A. Slaughter and Richard T. Brown, Jr., Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for plaintiff PNC Bank, Nat. Ass'n.

Robert L. White, Langhorne, PA, for defendant Bucks County Tax Claim Bureau.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is the complaint of PNC Bank, National Association, successor by merger to Provident National Bank (hereafter "PNC"), objecting to the claim of Bucks County Tax Claim Bureau (hereafter "Bureau") for 1991 property taxes (county, township, and school).[1] PNC objects to inclusion of interest and penalties in the Bureau's claim. PNC also seeks subordination of the Bureau's claim for interest and penalties and asserts that the claim should be disallowed in its entirety because it was filed untimely.[2] The parties have submitted this

---

1. Although the claim was filed for 1990 and 1991 taxes, no evidence regarding 1990 taxes was submitted.

2. The base tax assessed against the property is $208,681.99 of which $180,280.37 relates to the building and $28,401.62 to the land. The penalties claimed are $18,028.04 with respect to the building and $2,840.16 with respect to the land. Interest at nine percent, calculated on both the base tax and the penalty, from January 1992 amounts to $25,284.30 on the building and $3,983.38 on the land. Fees charged total $60. The Bureau's total claim according to the Stipulation of Facts is $245,119.91, calculated as of October 30, 1992. Stipulation of Facts at ¶ 15. However, the table showing the breakdown of base tax, interest, penalty and fees by parcel and land indicates a total of $258,877.87, with interest calculated to June, 1993. Stipulation of Facts at ¶ 8.

dispute on the pleadings and a stipulation of facts. Because no material facts are in dispute, we will decide the matter as submitted on the pleadings and stipulation.[3]

This bankruptcy was commenced by the filing of a chapter 11 petition on September 19, 1991. The bar date for filing claims was April 28, 1992. Ray Wall, tax collector for Bensalem Township, Bucks County, was served with notice of the bar date in February, 1992. The Bureau asserts that it had no notice of the bar date until October 1, 1992, when it received from Wall a copy of the August 24, 1992, order which approved the amended disclosure statement and set the hearing on plan confirmation. No claim was filed by any defendant until December 4, 1992, when the Tax Claim Bureau filed a proof of claim in the amount of $245,119.91. The claim was calculated as of October 30, 1992, Stipulation of Facts at ¶ 15, and, therefore, included postpetition interest and penalties. The plan was confirmed on October 2, 1992, and a modified plan was approved on December 22, 1992.

The Bureau's claim arises from property taxes assessed in 1991 against land and a building owned by Debtor and on which PNC held a mortgage. Pursuant to the confirmed plan, of which PNC's predecessor was the proponent, the estate was liquidated and its property was offered for sale at auction. The building was sold for $7.5 million to KBI Holding, Inc., free and clear of liens except for PNC's mortgage and any prepetition tax liens senior to the mortgage. No one offered to buy the land, and so, pursuant to the plan, it was conveyed to a designee of PNC. The plan stated the value of the land to be about 22 percent of that of the building or approximately $1.6 million. PNC's secured claim was allowed at $16,453,474. Thus, even without the existence of tax claims, PNC is grossly undersecured.

We must decide

1. whether the Bureau should be permitted to file a late proof of claim;
2. whether the Bureau's claim is secured or unsecured;
3. whether the interest and penalty portions of the claim are entitled to priority; and
4. whether the penalty and interest should be subordinated to the claims of general unsecured creditors.

### 1. *Late Proof of Claim*

 Debtor sent notice of the filing of the bankruptcy to Ray Wall and not to the Bureau. The Bureau became aware of the bankruptcy in October, 1992, 13 months after the bankruptcy was filed, when it received a copy of the order approving the disclosure statement. The plan was confirmed later in October, 1992. The proof of claim for taxes was not filed until December, 1992. The Bureau contends that notice to Wall as Township tax collector did not constitute notice to the county and so it should be permitted to file a late proof of claim. Under certain circumstances notice to a tax collector constitutes notice to the Bureau, *see generally Geier v. Tax Claim Bureau of Schuylkill County,* 527 Pa. 41, 588 A.2d 480 (1991). In this case we find no prejudice in considering the proof of claim as though it had been filed timely. Thus, we need not consider the effectiveness of the notice in the context of the Bureau's tardiness in filing its proof of claim.

The confirmed plan of reorganization provides for payment of the taxes, estimated in the disclosure statement to be a base tax of $208,400. The parties have stipulated that the base tax amount is $208,681.99. Stipulation of Facts at ¶ 8. Because the plan provides for payment of taxes, we find no prejudice to Debtor or other creditors in allowing the Bureau to file a late proof of claim or in allowing that claim in accordance with the terms of the plan, at least in the base amount, as an unsecured priority claim under

---

**3.** Defendant Ray Wall, Treasurer of Bensalem Township, did not file an answer and the Bureau's answer does not purport to speak on behalf of Wall. Wall alternatively is referred to as the township tax collector. In the complaint, PNC objected to the tax claim as scheduled in the amount of $208,387.12, asserting that this amount includes interest and penalties. Complaint at ¶ 4. PNC also objected to the claim as it appears on the proof of claim in the amount of $245,119.91. *Id.* at ¶ 6. *See also* Exhibit A to Complaint. The parties have now stipulated that the base tax amount for the land and building is $208,681.99. Stipulation of Facts at ¶ 8.

11 U.S.C. § 507(a)(7).[4] *See Pioneer Investment Services Co. v. Brunswick Assocs., L.P.,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Under these circumstances, we see no impediment to permitting the Bureau's filing a late proof of claim.

### 2. *Status of Tax Claim*

■ The parties do not dispute that the Bureau asserted § 507(a)(7) priority to the base tax claim in its proof of claim, and the plan is in accord. Furthermore, in its answer to the complaint, the Bureau admitted that its claim was listed in Debtor's schedules as an unsecured priority claim. The Bureau did not contradict this characterization of its claim until it filed its brief in this Adversary when, for the first time, it asserted a secured claim. The parties did not avail themselves of the opportunity extended to them for oral argument so we must decide this matter on the pleadings, stipulation, and briefs. Taking into account all circumstances, we conclude that the Bureau's claim, although a lien, was not perfected on the date of the filing of the bankruptcy and, therefore, is an unsecured § 507(a)(7) priority claim.

Pennsylvania statute provides that the types of taxes at issue here (county, township, and school) are a first lien on real estate. 53 P.S. § 7102; 72 P.S. § 5860.301. If the taxes which are due and payable remain unpaid by January 1 of the following year, the tax collector

> make[s] a return to the bureau on or before the last day of April of each year, but no earlier than the first day of January of that year. The return ... shall include a list of all properties against which taxes were levied, the whole or any part of which were due and payable in the calendar year immediately preceding and which remain unpaid....

72 P.S. § 5860.306. In this case the certification for delinquent 1991 taxes would have been made on or after January 1, 1992, which was three months postpetition. Pennsylvania statute further provides that "claims for taxes against property so returned must be entered by the bureau in the office thereof in suitable dockets." 72 P.S. § 5860.307. Furthermore, § 5860.302 requires that

> The lien for taxes shall exist in favor of the taxing district to which the tax is payable and the claim therefor shall be filed against the property taxed.

72 P.S. § 5860.302. Because the return was not made until after the bankruptcy was filed and there is no evidence that the claim for 1991 taxes was perfected prepetition, the liens were unperfected on the date of filing of the chapter 11. *See* 53 P.S. § 7143 ("Claims for taxes ... must be filed in the court of common pleas....").[5]

### 3. *Priority of Interest and Penalty*

■ We also find that the Bureau is not entitled to prepetition interest on its claim because interest did not begin to accrue until after the bankruptcy was filed. Had any interest matured on the claim prepetition, it would have been entitled to the same priority as the underlying tax. *See* 11 U.S.C. §§ 502, 507(a)(7); *In re Suburban Motor Freight, Inc.,* 36 F.3d 484, 489 (6th Cir.1994); *Matter of Garcia,* 955 F.2d 16, 18 (5th Cir.1992). However, Pennsylvania law provides that penalty and interest begin to run from the first day of the month following the township's certification[6] to the Bureau of unpaid taxes. 72 P.S. § 5860.306(a). The certification is not made until the year following that in which the tax was due and unpaid and interest begins to run "from and after but not before the first day of the month following the return". *Id.* In this case, certification occurred on a date after January 1, 1992, three months postpetition. Thus, no interest accrued until after the bankruptcy was filed in September of 1991. By virtue of the operation of state law, therefore, the prepeti-

---

**4.** Since this matter came before the court the Bankruptcy Code was amended. Section 507(a)(7) is now § 507(a)(8). *See* Bankruptcy Reform Act of 1994, P.L. 103–394, § 304(c) (October 22, 1994).

**5.** Whether the tax claims are secured or priority is not of controlling significance in this case

inasmuch as the taxes will be paid through the plan.

**6.** Section 5860.306 requires the tax collector to "make a return to the bureau" during the first four months of the year following that in which taxes remain unpaid.

tion priority claim of the Tax Claim Bureau consists of the base tax only.[7]

The plan provides that, to the extent that the tax is not paid from the proceeds of sale of the land and building, and, if the property was transferred to Provident, the tax will be paid "over a period of six years [from] the date of assessment of the Allowed Claim with interest at 6% per year". The land was transferred to Provident. Amended Plan of Reorganization Proposed by Provident National Bank at ¶ 4.8(a); Stipulation at ¶ 4. Interest will be allowed on the base tax claim only to the extent provided in the plan in accordance with § 1129(a)(9)(C) of the Bankruptcy Code.

In summary, to the extent any interest accrued prepetition, it would have received the same priority as the prepetition tax. All of the interest at issue in this case accrued postpetition, however. Thus, no claim for interest is entitled to priority treatment.

■ We also conclude that the penalty is not entitled to priority status. State law provides that each taxing district may establish a penalty of not more than ten percent to be added to taxes that remain unpaid four months after the date of the tax notice. 72 P.S. § 5511.10. In this case the penalty date was postpetition with respect to school taxes. However, with respect to county and township taxes, the four month date was June 30, 1991, three months before the bankruptcy was filed.[8] See Stipulation at ¶ 5. Therefore, some portion of the penalty is prepetition and some is postpetition. Nonetheless, penalties on seventh (now eighth) priority taxes will enjoy the same priority as the underlying tax only to the extent that the penalties are in compensation for actual pecuniary loss.[9] 11 U.S.C. § 507(a)(7)(G). We must decide whether the § 5511.10 penalty was punitive or whether it was in compensation for actual pecuniary loss.

Generally, some proof must be advanced to show that a penalty represents actual pecuniary loss because interest serves to compensate for the out-of-pocket loss. When penalties *and* interest are charged, the penalties typically are not considered to be compensatory. *See In re New England Carpet Company, Inc.,* 26 B.R. 934 (Bankr.D.Vt.1983). Even though, in this case, interest did not begin to run until after the certification was made with respect to delinquent taxes, an event that occurred postpetition, no proof of actual pecuniary loss was submitted nor has any explanation been placed of record as to what actual pecuniary loss the Bureau suffered, either pre- or postpetition. On this record we must conclude that the postpetition penalty is not in compensation for actual pecuniary loss.

In addition, the Pennsylvania legislature made separate provision for the accrual of interest and penalties and authorized different percentage rates. Section 5860.306(a) of title 72 of the Pennsylvania statutes provides for interest at nine per cent. Section 5511.10 of title 72 provides that penalties of not more than ten per cent shall be charged when tax is unpaid for four months after date of notice. The Bureau claims the maximum 10 per cent penalty but has not shown why, if the penalty is in compensation for actual pecuniary loss, the maximum penalty is the appropriate one. *See also* 72 P.S. § 5860.306(b) (referring to "penalties, interest and costs").

Based on the lack of evidence of actual pecuniary loss, we conclude that none of the penalties in this case are entitled to priority status.

### 4. *Subordination*

■ The final question is whether the penalty and interest portions of the claim should be subordinated to the claims of general unsecured creditors. As indicated above, there is no allowed claim for prepetition interest and the plan provides for postpetition

---

**7.** Even if we were to find that the base tax claim is secured, no right to interest on that claim existed until after the bankruptcy was filed. Thus, there is no prepetition interest allowable in this case.

**8.** The record does not establish whether any 1990 tax penalties are included.

**9.** The Bureau argues that the penalties are nondischargeable. That question is not before us and, furthermore, does not affect disposition of the questions at bar.

interest. As to the penalty, which we have determined to be a general unsecured claim without priority, we need not decide the issue inasmuch as there are no funds to pay any unsecured claims through the liquidation of this estate. The parties agree that there is insufficient value in the property to pay all secured and priority debt. The sale proceeds of $7.5 million dollars are less than half of the amount owed to PNC as the mortgage holder ($16,453,474) and the property is the only source of funding of the plan. The unsecured claims will not be paid whether or not any portion is subordinated. The fact that no payment will be made on any unsecured claim means that other general unsecured creditors cannot be harmed because of the addition of the penalty to the total unsecured claims pool.

An appropriate order will be entered.

### ORDER

And now, to-wit, this **24th** day of **April, 1995,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED** that the objection to the claim of the Bucks County Tax Claim Bureau and Ray Wall, Treasurer of Bensalem Township, is sustained in part and overruled in part.

It is **FURTHER ORDERED** that the Bucks County Tax Claim Bureau's claim is allowed as a priority claim under former 11 U.S.C. § 507(a)(7), now § 507(a)(8), in the amount of $208,681.99.

It is **FURTHER ORDERED** that all claims for prepetition interest were unmatured on the date of the bankruptcy filing and are disallowed. Postpetition interest is allowed in accordance with the terms of the confirmed plan of reorganization and this Memorandum Opinion. Penalties are allowed as unsecured claims without priority.

It is **FURTHER ORDERED** that the Clerk shall close this Adversary.