361 F.3d 1157
 In re: Owen GEORGE; In re: Deborah George, Debtors,
Owen George; Deborah George, Plaintiffs-Appellants,
v.
Uninsured Employers Fund; Stephen J. Smith, Director of Industrial Relations; Department of Industrial Relations; State of California, Defendants-Appellees.
 No. 01-16293.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 9, 2002.
 Filed March 18, 2004.
 
 COPYRIGHT MATERIAL OMITTED Michael E. Hansen, Sacramento, California, for the appellants.
 John A. Siqueiros, Department of Industrial Relations, Office of the Director-Legal Unit, Los Angeles, California, for the appellees.
 Appeal from the United States District Court for the Eastern District of California; William B. Shubb, District Judge, Presiding. D.C. No. CV-00-02754-WBS.
 Before: BALDOCK,* KLEINFELD, and RAWLINSON, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 This is a bankruptcy case. The issue is whether the claim of the California Uninsured Employers Fund ("the Trust Fund")[1] against an employer who failed to purchase workers' compensation insurance is an "excise tax."
 
 Facts
 
 2
 Owen and Deborah George petitioned for bankruptcy under Chapter 7 on October 20, 1998, and obtained a discharge from debt on January 4, 1999. A year later, on February 7, 2000, they were found liable on a debt for $116,000. The debt arose because they had failed to cover an employee injury by purchasing workers' compensation insurance or meeting state requirements for self insurance, as required by law.[2]
 
 
 3
 The Trust Fund filed a lien against the Georges' real property. The Georges filed a complaint in their bankruptcy case to establish that the debt had been discharged and to avoid the lien. The Bankruptcy Court held that the Trust Fund's claim was not an "excise tax," so the debt was discharged and the lien was void. The Trust Fund appealed, and the District Court reversed. The Georges appeal.
 
 Analysis
 
 4
 Among the exceptions to discharge in 11 U.S.C. § 523 are taxes of the kind and for the periods specified in subsection (a)(8) of 11 U.S.C. § 507, the priorities section. Such taxes include "(E) an excise tax on —... (ii) ... a transaction occurring during the three years immediately preceding the date of the filing of the petition."[3] The sole issue raised on appeal is whether the Trust Fund's claim is this type of excise tax.
 
 
 5
 The amount at issue is called by California law a "liquidated claim for damages,"[4] not an "excise tax." California law provides that if an employer fails to pay or secure payment of a workers' compensation award, the injured worker may obtain payment from the Trust Fund, which is "a special trust fund account in the State Treasury."[5] The issue in this case is not whether the injured employee gets paid. He already has been, out of the Trust Fund. The practical issue is whether the people of California have a continuing claim for reimbursement of what they paid the injured worker, that survives bankruptcy, against the Georges for failure to secure workers' compensation insurance, or whether the Georges get a fresh start.
 
 
 6
 A final award that is "the subject of a demand on the [Trust] Fund ... shall constitute a liquidated claim for damages against an employer."[6] The terminology the state uses to define the money does not control the federal-bankruptcy-law question of whether the debt is discharged by bankruptcy.[7] In United States v. Reorganized CF & I Fabricators of Utah, Inc.,[8] the Supreme Court held that even a federal statutory denotation of the amount as a "tax" did not make it a tax for bankruptcy discharge purposes. Federal courts apply a "functional examination" to the exaction, regardless of how it is labeled, to determine whether it is a tax, a penalty, a debt, or something else.[9] "[A] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government,"[10] as distinguished from a penalty, which is "an exaction imposed by statute as punishment for an unlawful act."[11] Even though the money in Reorganized CF & I Fabricators would go to the United States Treasury and was termed a"tax" in the federal statute imposing the obligation, it was not a "tax," and thus not an "excise tax," because it was in substance a 100% penalty on pension plan funding deficiencies. Reorganized CF & I Fabricators does not really give us an answer for this case, because the amount the Georges owe the Trust Fund is not so obviously penal.
 
 
 7
 In In re Lorber Industries of California, Inc.,[12] we held that charges imposed by a county for use of its sewer system to dispose of hazardous wastes were not an excise tax. We applied this tax definition: (1) An involuntary pecuniary burden (2) imposed by the state legislature (3) for a public purpose (4) under the state's police or taxing power.[13] Our point in so refining the definition of a tax was to distinguish taxes from debts for voluntarily assumed obligations, and thereby to limit nondischargeable priority obligations under the "excise tax" provision to those "justified by clear statutory authorization."[14] We noted in Lorber that "the trend of amendments to section 64(a) has been to erode the preferred status of taxes," because "as accelerating taxation absorbed greater percentages of the bankrupt's estate, Congress recognized that broad priority classifications hampered the goal of equitable distribution of the estate and penalized general creditors."[15] Voluntariness was the issue, and we limited involuntariness to "inherent characteristics of the charges," not the "motivation" of the payer or the "practical and economic factors which constrained" the payer.[16] The amount at issue was not the ad valorem tax based on the value of the payer's real estate, but rather the additional fee for excess industrial use "triggered by Lorber's decision to discharge into the system large amounts of industrial wastewater."[17] This was a fee for services to industrial users rather than for services to the general population, which the payer subjected itself to by applying for a permit. It was therefore dischargeable and non-priority under the bankruptcy code.[18]
 
 
 8
 If Reorganized CF & I Fabricators and Lorber were all we had, the trend would suggest that the Georges' obligation could not be a tax. The amount is not imposed on all employers, just those who do not buy workers' compensation insurance or do not properly self insure, and the amount is not for the general support of government, but rather for reimbursement of the expense the government bears in paying the employer's workers' compensation obligation. Reorganized CF & I Fabricators classified, as not a tax for bankruptcy purposes, what was otherwise a "tax" for federal tax purposes. And Lorber, emphasizing the inequity to general creditors of an overly broad reading of "tax" and the trend of Congressional restriction of the tax priority, classified, as not a tax, the extra amount paid by heavy industrial users of the county's sewer district services.
 
 
 9
 But in our decision most directly on point, In re Camilli,[19] we changed directions. There we held, reversing the Bankruptcy Appellate Panel, that a claim by the Arizona fund similar in purpose to the Trust Fund is an "excise tax" for bankruptcy purposes. Both this case and Camilli involve a state claim against a bankrupt employer, who failed to secure workers' compensation insurance, for reimbursement of the amount paid an injured worker. Camilli distinguished our prior decision in Lorber on the ground that "at the time [Camilli's obligation to repay the fund] arose," it was "the product of legislative fiat" and "was wholly beyond [her] control."[20] Also, securing worker's compensation insurance or an approved alternative was not voluntary in Arizona, but rather was "a legal duty."[21]
 
 
 10
 The Sixth Circuit had gone the other way in another unsecured workers' compensation case, In re Suburban Motor Freight.[22] The bankrupt had not paid its premiums under the state workers' compensation scheme, so it was, like the bankrupts in Camilli and in this case, an illegally uninsured employer. The Sixth Circuit nevertheless held that the state fund's reimbursement claim for payments made to an injured worker was not an "excise tax" for bankruptcy purposes.[23] Suburban Motor Freight refined the Lorber test, because its "public purpose" definition of a tax was too broad, and required in addition "(1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to the government claim not disadvantage private creditors with like claims."[24] The employer's liability arose from its failure to secure workers' compensation coverage, not from its status as an employer, so the "universally applicable" requirement of a tax did not apply.[25] Also, the liability was not a tax for the "independent reason" that bonding companies that had paid part of the employer's obligation would be unfairly disadvantaged by priority for the government's similar claim.[26]
 
 
 11
 In Camilli we could have simply disagreed with the Sixth Circuit decision in Suburban Motor Freight, but we did not. Instead, we held that we did not have to decide whether its additional criteria for a tax applied, because the workers' compensation schemes in Ohio and Arizona were different from each other. We noted that Arizona had not created a state-government-monopoly insurance scheme, whereas Ohio had. We also determined that, nevertheless, "[n]o private entity competes with the [Arizona fund] to pay `insurance' claims for which no insurance has been bought," and "[t]hus, there are no private creditors with claims similar[to the Arizona fund's claims]."[27]
 
 
 12
 We as a panel are required to follow Camilli, so there is no point in our evaluating whether it was correctly decided. The only question is whether Camilli is distinguishable from this case. Arguments made by counsel for the Georges persuade us that it is. Camilli distinguished Lorber because of some unique, non-universal characteristics of the Arizona workers' compensation system. For example, Arizona statutes designate payments made to injured employees as "judgment[s] against the employer"[28] that "have the same priority against the assets of the employer as claims for taxes."[29] Camilli notes that in Arizona no similar creditors could be disadvantaged by priority and nondischargeability.[30] In California, injured employee payment reimbursement is pursued against the employer as a "liquidated claim for damages."[31] The California designation suggests that the appropriate comparison is to other claimants holding an entitlement to liquidated damages, some of whom could be non-governmental entities. The state law designation is not, as we have already explained above, controlling; it does, however, demonstrate the relative importance each state places on being reimbursed.
 
 
 13
 Moreover, if a creditor similarly situated to the government can be hypothesized under the relevant statute, then by the reasoning of Camilli, the government claim is not a tax. Under the California scheme, another employer could have a competing claim against the uninsured employer if the worker has suffered a cumulative injury.[32] In California, unlike in Arizona, the Trust Fund is not the sole source for compensation for a cumulatively-injured employee of an uninsured employer because another employer may also be liable. Under California law, another employer could be a competing creditor if two employers were liable to a worker, but only one employer paid the worker. That employer's claim would be subrogated to the injured worker's claim against the uninsured employer, and would be subordinated if we were to treat the Trust Fund's "liquidated claim for damages" as an excise tax.[33] Under Arizona law, by contrast, only the last employer in whose employment the injured worker was injuriously exposed has liability.[34]
 
 
 14
 Congress said that "excise taxes" are nondischargeable for the three years preceding filing for bankruptcy, not that all government claims of any kind are nondischargeable.[35] The government can have many claims that are not in the nature of taxes. For example, if someone crashes his plane into Mt. McKinley and dies, the Department of the Interior sends his estate a bill for littering the mountain.[36] That is analogous to a private landowner's claim for trespass, not to a tax. Likewise, if a person is injured in an accident that is someone else's fault, and obtains treatment in a veterans' hospital, the government is subrogated to the injured individual's rights against the tortfeasor.[37] The claim is not in the nature of a tax but rather in the nature of any public or private subrogated party's right to recovery against a tortfeasor.
 
 
 15
 The continuing refinements of the definition of "tax" in Lorber, Suburban Motor Freight, and Camilli reveal the difficulty of distinguishing, with exclusively ahistorical tools, taxes from non-tax government claims. We do not question the definitions of "tax" in Lorber and Camilli, but those definitions alone are not sufficient to distinguish an "excise tax" for purposes of 11 U.S.C. § 507(a)(8)(E) from other government exactions. The word "excise" derives from the Latin ex, for "out," and caedere, meaning "to cut," and was in previous centuries used somewhat as we presently use "circumcise."[38] In the context of taxes, the term "excise taxes" has traditionally been used in the United States to refer to taxes on "the sale of a specified commodity" measured by value or quantity, such as alcohol, tobacco, or motor fuel, as opposed to taxes on income.[39] This sense is preserved in the bankruptcy statute by the phrasing "an excise tax on — ... (ii) ... a transaction occurring during the three years immediately preceding the date of the filing of the petition."[40]
 
 
 16
 The Trust Fund claim against the Georges was not an exaction "on a transaction" the Georges made. Their only relevant transaction was hiring the employee who got injured, but hiring does not occasion a Trust Fund claim in California, and neither does an employee injury. What occasions such a claim is the failure to make the transaction of purchasing workers' compensation insurance (or applying for self-insured status). It is hard to squeeze the absence of a transaction, which triggers California Trust Fund liability, into the bankruptcy statute requirement of "a transaction occurring during" the three years preceding bankruptcy.[41] We conclude that the Trust Fund's claim is not an "excise tax" for purposes of federal bankruptcy law.
 
 
 17
 REVERSED.
 
 
 
 Notes:
 
 
 *
 The Honorable Bobby R. Baldock, Senior United States Court of Appeals Judge for the Tenth Circuit, sitting by designation
 
 
 [1]
 After this litigation began, the California state legislature renamed the Uninsured Employers Fund the Uninsured Employers Benefits Trust Fund. 2003 Cal. Stat. 228See Cal. Lab.Code § 62.5(c)(2) ("[A]ll references to the Uninsured Employers Fund shall mean the Uninsured Employers Benefits Trust Fund.").
 
 
 [2]
 See Cal. Lab.Code § 3716(b).
 
 
 [3]
 11 U.S.C. § 507(a)(8)(E)(ii)
 
 
 [4]
 Cal. Lab.Code § 3717(a)
 
 
 [5]
 Id. § 62.5(c)(1).
 
 
 [6]
 Id. § 3717(a).
 
 
 [7]
 City of New York v. Feiring, 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941).
 
 
 [8]
 United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996).
 
 
 [9]
 Id. at 224, 116 S.Ct. 2106.
 
 
 [10]
 Id. (quoting New Jersey v. Anderson, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 284 (1906)).
 
 
 [11]
 Id. (quoting United States v. LaFranca, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551 (1931)).
 
 
 [12]
 In re Lorber Indus. of Cal., Inc., 675 F.2d 1062 (9th Cir.1982).
 
 
 [13]
 Id. at 1066.
 
 
 [14]
 Id.
 
 
 [15]
 Id. at 1067-68.
 
 
 [16]
 Id. at 1066.
 
 
 [17]
 Id. at 1067.
 
 
 [18]
 Id. at 1067-68.
 
 
 [19]
 In re Camilli, 94 F.3d 1330 (9th Cir.1996).
 
 
 [20]
 Id. at 1333.
 
 
 [21]
 Id.
 
 
 [22]
 In re Suburban Motor Freight, 36 F.3d 484 (6th Cir.1994).
 
 
 [23]
 Id. at 487-88.
 
 
 [24]
 Id. at 488.
 
 
 [25]
 Id. at 489.
 
 
 [26]
 Id.
 
 
 [27]
 Camilli, 94 F.3d at 1334.
 
 
 [28]
 Ariz.Rev.Stat. § 23-907(E)
 
 
 [29]
 Id. § 23-933.
 
 
 [30]
 Camilli, 94 F.3d at 1334.
 
 
 [31]
 Cal. Lab.Code § 3717(a)
 
 
 [32]
 Id. § 5500.5.
 
 
 [33]
 Id. § 3717(a).
 
 
 [34]
 Ariz.Rev.Stat. § 23-901.02
 
 
 [35]
 11 U.S.C. § 507(a)(8)(E)
 
 
 [36]
 See 43 C.F.R. §§ 2881.3, 2920.1-2, 9239.1-2.
 
 
 [37]
 See 38 C.F.R. §§ 2.6(e)(4)(iii), 17.47(g).
 
 
 [38]
 5 Oxford English Dictionary 505 (J.A. Simpson & E.S.C. Weiner eds., 2d ed. 1989)
 
 
 [39]
 Langdon Day, Marvin A. Chirelstein, Elisabeth A. Owens & Stanley S. Surrey,Taxation in the United States § 4/2.1 (1963).
 
 
 [40]
 11 U.S.C. § 507(a)(8)(E) (emphasis added)
 
 
 [41]
 Id.