RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0162p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: HOWARD D. JUNTOFF,

*Debtor*.

─────────────────────────────────────────

INTERNAL REVENUE SERVICE,

*Creditor-Appellee*,

*v.*

HOWARD D. JUNTOFF,

*Debtor-Appellant*.

No. 22-3312

─────────────────

On Appeal from Bankruptcy Appellate Panel of the Sixth Circuit.
No. 21-8011—James L. Croom, Scott W. Dales, Alan C. Stout, Bankruptcy Appellate Panel Judges.

United States Bankruptcy Court for the Northern District of Ohio at Cleveland.
Nos. 1:19-bk-17032—Arthur I. Harris, Bankruptcy Judge.

Argued:  July 10, 2023

Decided and Filed:  July 31, 2023

Before:  SUTTON, Chief Judge; DAVIS and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Marcel C. Duhamel, VORYS, SATER, SEYMOUR AND PEASE LLP, Cleveland, Ohio, for Appellant.  Marie E. Wicks, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Marcel C. Duhamel, Matthew D. Fazekas, VORYS, SATER, SEYMOUR AND PEASE LLP, Cleveland, Ohio, Joseph M. Romano, THE ROMANO LAW FIRM, Cleveland, Ohio, for Appellant.  Marie E. Wicks, Ellen Page DelSole, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

---

SUTTON, Chief Judge.  In passing the Affordable Care Act, Congress created a "Shared Responsibility Payment" for individuals who did not purchase qualifying individual health insurance plans.  Congress eventually eliminated the Payment.  That development did not end debates over whether the Payment is a tax or a penalty.  At issue today is whether the Payment amounts to a "tax . . . measured by income" under the Bankruptcy Code's provisions for prioritizing the payment of some debts over others.  We join the Third and Fourth Circuits in concluding that it is.

I.

From 2014 to 2018, the Affordable Care Act's individual mandate instructed most Americans to purchase health insurance.  26 U.S.C. § 5000A(a) (2012); *see also California v. Texas*, 141 S. Ct. 2104, 2112 (2021).  Abstainers paid a levy, the "Shared Responsibility Payment," as a "penalty."  26 U.S.C. § 5000A(b).  Congress set the Payment equal to 2.5% of the taxpayer's income, subject to a floor ($695, adjusted for inflation) and a ceiling (the nationwide average premium for certain health insurance plans).  *Id.* § 5000A(c)(1)–(3).

Some questioned the constitutional pedigree of the individual mandate.  The Supreme Court agreed with the challengers, in part.  It held that the Commerce Clause did not authorize Congress to compel Americans to purchase health insurance.  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 561 (2012) (opinion of Roberts, C.J.) (*NFIB*).  But it saved § 5000A from invalidity by construing the mandate "as imposing a tax."  *Id.* at 563 (majority).

Spared from a verdict of unconstitutionality by the courts, the mandate could not escape further review by the democratic process in Congress.  The National Legislature eliminated the mandate in 2017 and relieved any responsibility under it for tax years 2019 and after.  That might have ended legal and policy debates about the status of the Shared Responsibility Payment but for a reference in the Bankruptcy Code.

In 2018, Howard Juntoff opted not to buy the minimum health insurance and failed to make his Shared Responsibility Payment.  After he declared bankruptcy, the IRS tried to collect the Payment from him and filed a proof of claim in bankruptcy court.  The agency asked for priority above other debtors under a provision that covers bankruptcy "claims" by "governmental units" for any "tax on or measured by income."  11 U.S.C. § 507(a)(8)(A).

The bankruptcy court denied the request, reasoning that the Shared Responsibility Payment was not a "tax on or measured by income."  The Bankruptcy Appellate Panel reversed, prompting Juntoff to file this appeal.

II.

When a debtor declares bankruptcy, the Bankruptcy Code generally grants each unsecured creditor an equal claim on his assets.  *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006); *see, e.g.*, 11 U.S.C. §§ 726(a)–(b), 1129(a)(7)(A)(ii), 1325(a)(4).  But the Code gives some claimants "priority," putting them higher in line for payment.  11 U.S.C. § 507; *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 457 (2017).

Today's case involves one such provision.   Section 507(a)(8)(A) offers priority to "unsecured claims of governmental units . . . [for] a tax on or measured by income."  The parties agree that the IRS is a "governmental unit," leaving two questions:  Is the Shared Responsibility Payment a "tax"?  If so, is it "measured by income"?  We consider each in turn.

*Is the Payment a "tax"?*  Section 507(a)(8)(A) covers claims for unpaid "tax[es]."  It does not reach "penalties" or "fees."  *See United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996) (penalties); *Spiers v. Ohio Dep't of Nat. Res.* (*In re Jenny Lynn Mining Co.*), 780 F.2d 585, 588 (6th Cir. 1986) (fees).  As Juntoff concedes, or at least as the inaction in his brief suggests, the Shared Responsibility Payment does not resemble a fee.  That makes it either a tax or a penalty.  *See Spiers*, 780 F.2d at 587–89 (describing the tax/fee distinction in more detail).

The Code does not define taxes or spell out the difference between taxes and penalties.  But the Supreme Court's cases offer guidance.  "[A] tax," they say, "is a pecuniary burden laid

upon individuals or property for the purpose of supporting the Government." *CF & I*, 518 U.S. at 224 (quoting *New Jersey v. Anderson*, 203 U.S. 483, 492 (1906)). By contrast, a "penalty" "is an exaction imposed by statute as punishment for an unlawful act." *Id.* (quoting *United States v. La Franca*, 282 U.S. 568, 572 (1931)). To distinguish the two, we look beyond congressional "label[s]," for what Congress calls a "tax" can be a "penalty" under the Bankruptcy Code and what Congress calls a "penalty" can be a "tax." *Id.* at 220; *compare id.* at 225–26, *with United States v. Sotelo*, 436 U.S. 268, 275 (1978). Instead, we consider a levy's "operation," "function[]," and "actual effects." *CF & I*, 518 U.S. at 220–25.

Which functional facts matter? The key question is whether the exaction works like mere revenue-raising tax laws or like a sanction imposed on lawbreakers. *Id.* at 224; *cf. Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779–83 (1994). Levies drawn at ordinary rates from ordinary citizens look like taxes, especially when the IRS collects them through a citizen's annual tax return. *See, e.g.*, *Sotelo*, 436 U.S. at 275; *United States v. New York*, 315 U.S. 510, 514–17 (1942). But when a levy targets independent acts of misconduct, say violations of state or federal law, or makes liability turn on a culpable mental state, the exaction operates more like a penalty. *CF & I*, 518 U.S. at 225 & n.9; *cf. Helwig v. United States*, 188 U.S. 605, 612 (1903). In the same way, levies "enormously in excess" of typical taxes resemble punishments more than run-of-the-mine, revenue-raising taxes. *Helwig*, 188 U.S. at 613; *see CF & I*, 518 U.S. at 225–27.

Gauged by these principles, the Shared Responsibility Payment amounts to a "tax" under § 507(a)(8). Start with the reality that the congressional label—here a "payment" and a "penalty"—is relevant but not dispositive. What is dispositive is the function and manner of the exaction.

This Payment has several tax-like qualities. The IRS collects it and uses it to fund the government, just as it does with taxes. 26 U.S.C. § 5000A(g); *cf. New York*, 315 U.S. at 514–17. The Shared Responsibility Payment targets ordinary taxpayers—the millions of Americans who chose to abstain from purchasing health insurance—and is paid through an individual's annual tax return. The Payment does not apply to individuals who are exempt from paying taxes. 26 U.S.C. § 5000A(e)(2). Unlike a penalty, the Payment does not apply just to those who fall

afoul of some independent "federal prohibition." *CF & I*, 518 U.S. at 225 n.9. Recall that Congress did not make the failure to buy health insurance illegal or make the Payment turn on a taxpayer's culpable *mens rea*. As the Court explained in *NFIB*: "While the individual mandate clearly aims to induce the purchase of health insurance, it need not be read to declare that failing to do so is unlawful." 567 U.S. at 567–68.

The Payment's burdens do not "enormously . . . exce[ed]" those associated with traditional taxes either. *Helwig*, 188 U.S. at 613. Congress capped the Shared Responsibility Payment at the average national cost of a qualifying health insurance plan, hardly a penalty-like exaction. *See NFIB*, 567 U.S. at 539, 566. And tax-like considerations—such as taxable income, joint or individual filing status, and number of dependents—drive what the individual owes. *Id.* at 563.

We are not the first ones to assess the qualities of this Payment to the government. The Supreme Court construed § 5000A "to impose" a tax under the Taxing Clause. *Id.* Statutes usually "mean[] the same thing in all settings." *Haight v. Thompson*, 763 F.3d 554, 569 (6th Cir. 2014). Having relied on Congress's Taxing Power to uphold the validity of the law, *NFIB* gives us ample reason to characterize the provision as a tax under the Bankruptcy Code as well. Think about it this way. What if *NFIB* had held that the Payment was a penalty (permissibly) imposed under Congress's Commerce Clause powers and not a tax imposed under its Taxing power? In that setting, a middle-management court would be hard pressed down the road to treat the Payment as a tax in a bankruptcy case. The nature of an exercise of congressional power and the nature of the product of that power customarily align. *Id.* at 568–69.

What's more, the tax/penalty analysis under the Bankruptcy Code shares many features of the tax/penalty analysis under the Constitution, enough so that *NFIB*'s analysis rests in (admittedly small) part on bankruptcy cases. *See NFIB*, 567 U.S. at 565–67, 565 n.7 (citing *CF & I* and *Sotelo*). All of this makes it appropriate to say that a tax under the Constitution is usually a tax under the Bankruptcy Code.

We have some company in taking this approach. The Third and Fourth Circuits, in two well-reasoned decisions, have held that the Shared Responsibility Payment qualifies as a "tax"

under § 507(a)(8)(A). *In re Szczyporski*, 34 F.4th 179, 187 (3d Cir. 2022); *United States v. Alicea*, 58 F.4th 155, 165 (4th Cir. 2023). No circuit to our knowledge takes a different view on this point.

Juntoff tries to fend off this conclusion in several ways. He points out that § 5000A, as noted, describes the Shared Responsibility Payment as a "penalty." But in the bankruptcy context, as under the Constitution, labels inform the inquiry but do not control it. *Sotelo*, 436 U.S. at 275 (holding that statutory "penalty" counted as "tax" under Bankruptcy Code).

He notes that § 5000A exempts individuals from the Payment if acquiring insurance would be a hardship. But that feature of the law is not unique to penalties. Many tax statutes provide for hardship-related exemptions. *See, e.g.*, 26 U.S.C. § 72(t)(2)(A)(iii), (t)(2)(B) (exempting distributions "attributable to . . . disab[ility]" and for medical care from surtax on early retirement plan distributions); *id.* § 2056A(b)(3)(B) (exempting "distribution[s] . . . on account of hardship" from subcomponent of estate tax). Consistent with this reality, the Court considered and rejected arguments predicated on § 5000A's exemptions in *NFIB*. *Compare* 567 U.S. at 667 (Scalia, Kennedy, Thomas & Alito, JJ., dissenting), *with id.* at 563–67 (majority opinion).

Nor does it matter that *NFIB* read § 5000A as it did to commute a sentence of unconstitutionality. *Id.* at 563–64. The Court saved the law by treating it as a "tax," making it sensible, even if not a foregone conclusion, to treat the law as a tax in related settings. Section 5000A should retain one meaning after those validity considerations fall away; it is not "a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case." *Clark v. Martinez*, 543 U.S. 371, 382 (2005). The assumption that the same word should have the same meaning in directly related statutes remains.

That same assumption, for like reasons, wins out in dealing with a competing tradition—construing preference-granting priority provisions "tightly." *Howard Delivery Serv., Inc.*, 547 U.S. at 667. The Court's decision in *NFIB*, plus the mandate's tax-like properties, outweigh

the canon of tightly construing Code preferences.  *Cf. Bartenwerfer v. Buckley*, 143 S. Ct. 665, 673 (2023) (declining to use similar canon "to artificially narrow [statute's] ordinary meaning").

We appreciate that *NFIB* treated § 5000A as a penalty rather than a tax for purposes of the Anti-Injunction Act before it engaged with the constitutionality of the law.  567 U.S. at 544.  That's what allowed the lawsuit to proceed.  But the Anti-Injunction Act's reach depends on statutory labels in a way that the Bankruptcy Code's scope does not, making *NFIB*'s Anti-Injunction analysis less apposite.  *Id.*; *cf. Snyder v. Marks*, 109 U.S. 189, 192 (1883) (The Tax Anti-Injunction Act reaches "that which is in a condition to be collected as a tax, and is claimed by the proper public officers to be a tax.").  As between following *NFIB*'s characterization of the Payment for merits purposes or gateway purposes, we think the better course is to stick with its merits treatment.  Likewise, as between treating § 5000A the same for Bankruptcy Code and source-of-authority purposes or the same for Bankruptcy Code and Anti-Injunction Act purposes, we think the better course is to stick with its source-of-authority rulings.

*Ohio Bureau of Workers' Compensation v. Yoder* (*In re Suburban Motor Freight, Inc.*) does not lead to a different answer.  36 F.3d 484 (6th Cir. 1994) (*Suburban II*).  An employer fell behind on obligatory payments to a state workers' compensation fund.  *Id.* at 486–87.  The fund charged the employer more in response.  *Id.*  We characterized the assessments as penalties rather than taxes, emphasizing that they were "discretely imposed due to [the employer's] disregard of its statutory obligations."  *Id.* at 489.  Here, by contrast, Juntoff had no independent "statutory obligation[]" to purchase health insurance.  *Id.*; *see NFIB*, 567 U.S. at 568.

*United States v. Chesteen* (*In re Chesteen*) also does not change things.  799 F. App'x 236 (5th Cir. 2020) (per curiam).  In that unpublished decision, the Fifth Circuit held that the Shared Responsibility Payment was not an "excise tax" within the meaning of the Bankruptcy Code, reasoning that excise taxes applied to "activity" and that the Shared Responsibility Payment did not.  *Id.* at 240–41.  Right or wrong, this conclusion bears little on whether the Shared Responsibility Payment counts as a "tax" at all.  *Chesteen* in fact assumed that the Payment "operates as a tax . . . for bankruptcy purposes."  *Id.* at 239; *see id.* at 240.

Last of all, the multi-factor *Lorber-Suburban* test does not help Juntoff. That test, derived from two cases distinguishing taxes from fees, describes taxes as (1) "involuntary pecuniary burden[s]" (2) imposed by legislatures (3) for public purposes (4) under their police or taxing powers, so long as they (5) apply "universally" to "similarly situated persons or firms" and (6) do not parallel a private creditor's "arguably equal claims." *Yoder v. Ohio Bureau of Workers' Comp.* (*In re Suburban Motor Freight, Inc.*), 998 F.2d 338, 340–42 (6th Cir. 1993) (*Suburban I*); *see Cnty. Sanitation Dist. No. 2 of L.A. Cnty. v. Lorber Indus. of Cal., Inc.* (*In re Lorber Indus.*), 675 F.2d 1062, 1066 (9th Cir. 1982). The Shared Responsibility Payment ticks each box: It is not voluntary, Congress imposed it under the Taxing Clause for a public purpose, it applies equally to every American who fails to purchase health insurance, and it does not mimic the sort of claim that a private insurer might present. *See Szczyporski*, 34 F.4th at 187. At any rate, both *Lorber* and *Suburban I* dealt with the tax/fee distinction rather than the tax/penalty distinction, and both cases predate the Supreme Court's decision in *CF & I*. In view of these realities, it is not obvious that the *Lorber-Suburban* approach offers the best way of separating penalties from taxes.

All perspectives considered, the Shared Responsibility Payment is a "tax" under § 507(a)(8).

*Is the Payment "measured by income"?* Section 507(a)(8)(A), recall, does not apply to *all* taxes. It applies only to taxes "on or measured by income or gross receipts." The government satisfies this requirement as well.

The key words for present purposes are "measured" and "income." "Measured" means "ascertained" or "proportioned." *Black's Law Dictionary* 884 (5th ed. 1979) ("That by which extent or dimension is ascertained . . . . The rule by which anything is adjusted or proportioned."); *see Webster's New Collegiate Dictionary* 706 (8th ed. 1979). "Income" means "accessions to wealth," *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955), or "return in money from one's business, labor, or capital," *Black's Law Dictionary* at 687; *see Webster's New Collegiate Dictionary* at 576.

Section 5000A "measures" tax liability "by income." It keys a taxpayer's amount owed to household income—"income" by any fair measure. 26 U.S.C. § 5000A(c)(4). And it "ascertains" or "apportions" liability "by" income too. In 2018, taxpayers with household incomes less than $39,800 paid a flat amount in accordance with § 5000A's floor; those with incomes greater than $147,840 paid another flat amount under its ceiling; and those in between paid a levy equal to 2.5% of their household income above the $12,000 filing threshold. *Szczyporski*, 34 F.4th at 189. That formula apportions liability based on income and hence "measures" liability "by" it. *Id.*; *see Alicea*, 58 F.4th at 165–66.

Juntoff replies that the Shared Responsibility Payment is not "measured by income" because taxpayer liability turns on factors besides income, such as whether the taxpayer purchased health insurance. But the statute refers to taxes "measured by income," not "measured *only* by income." Else, many income-measuring taxes, perhaps most, would fall outside its ambit. Liability under the federal income tax, for example, is measured by many factors besides income and income alone. Is the taxpayer married? Does he have dependent children? *See* 26 U.S.C. §§ 1(a), 151(c). It does not follow that a taxpayer's federal income tax liability is not "measured by income." *Cf. Alicea*, 58 F.4th at 165–66.

*In re O.P.M. Leasing Services, Inc.* does not change this reality. 60 B.R. 679 (Bankr. S.D.N.Y. 1986). Texas levied a tax on a corporation's Texas capital stock, calculating the tax base by multiplying the corporation's total capital and surplus by the fraction of its gross receipts received in Texas. *Id.* at 681–82. The Bankruptcy Court for the Southern District of New York held that Texas did not "measure" its tax "by" gross receipts, as the small fraction of gross receipts played only an ancillary role in its calculation of the taxes owed. *Id.* at 682–83. Here, by contrast, "household income provides the starting point for all [Shared Responsibility Payment] calculations." *Alicea*, 58 F.4th at 165. For that reason, we, like the Third and Fourth Circuits, "have no difficulty concluding that the [Payment] is 'measured by income.'" *Id.*; *see Szczyporski*, 34 F.4th at 187.

We affirm.